John F. Kenny and Alice E. Held, Appellees, v. T. L. Arzt Foundry Co., Appellant.

Gen. No. 41,511.

Opinion filed January 22, 1941.

P. F. MURRAY, of Chicago, for appellant; JOHN T. MURRAY, of Chicago, of counsel.

WEISSENBACH, HARTMAN, CRAIG & OKIN, of Chicago, for appellees; HARRY OKIN and CECIL MAGID, of Chicago, of counsel.

MR. JUSTICE BURKE delivered the opinion of the court.

On May 10, 1940, plaintiffs filed their complaint in the superior court of Cook county and alleged that they were engaged in the foundry business in the city of Chicago, and that in order to provide themselves with a place for the continued operation of their business, on November 1, 1939, they acquired title to the foundry plant and premises commonly known as 2300–24

Bloomingdale avenue, Chicago, Illinois, together with cupola and elevator located on the premises, and all cranes, overhead track, wiring, plumbing, heating apparatus, shelving, air lines, linoleum, lighting, lighting fixtures, attached motors and runway, dust arrestor and attached motor, core oven, moulding benches, cupola blower and motor, core cars and built-in Krone floor scale; that they were seized in fee simple title to the real estate and to the machinery and equipment described, which they claimed to be part and parcel of the real estate; that defendant was then in possession of the premises under a lease which would expire on June 30, 1940; that plaintiffs contemplated taking possession of the premises for the operation of their business after the expiration of defendant's lease; that defendant was likewise engaged in the operation of a foundry in competition with the plaintiffs; that defendant informed them that it would vacate the premises on or prior to the date of the expiration of its lease; that defendant threatened, under claim of ownership of a portion of the equipment contained in the plant, to dismantle the plant and to remove therefrom certain of the machinery and equipment, the property of plaintiffs, namely, the wiring, plumbing, air lines, linoleum, cranes and attached motors and runway, overhead track, core oven, cupola, core cars, moulding benches, elevator, floor scale, cupola blower and motor, lighting fixtures and other equipment permanently affixed to and being a part of the premises; that defendant threatened other waste and to leave standing on the premises only four bare walls; that the acts of defendant would, if carried out, do irreparable injury to the premises and to the plaintiffs by preventing them, after the vacating of the premises by defendant, to begin operation of their foundry business on the premises; and plaintiffs prayed that the defendant, its officers, agents and employees be enjoined from dismantling any part of the foundry plant and from re-

moving therefrom any of said equipment, and that plaintiffs be decreed to be the true and lawful owners of the real estate and foundry plant contained therein, including the machinery and equipment described. In answering, defendant stated that it had occupied the premises for a period of 5 years and "was the owner and is still the owner" of the foundry plant and equipment described in the complaint, and that it is "still the owner of the personal property described" in the complaint; that the equipment mentioned is personal property and that defendant "was the owner and is now the owner" of such personal property; that plaintiffs had knowledge of the right, title and ownership of the defendant in and to such personal property prior to their purchase of the real estate in question; and defendant denied that it intended to leave standing on the premises four bare walls, or that it intended to commit any unlawful act in the removal "of its property from the premises"; and denied that plaintiff was entitled to the relief prayed. The court granted a temporary injunction. The cause was referred to a master in chancery. During the court of the hearings the parties stipulated that the elevator, lighting, wiring and lighting fixtures, plumbing and heating apparatus, linoleum, 2 large built-in core ovens approximately 14 x 9 and certain air lines were the property of plaintiffs, and that the following items were claimed by both plaintiffs and defendant:

(1)  Power wiring, fuse boxes, starting switches and controllers.
(2)  Wooden shelving in pattern storage room.
(3)  Dust arrestor.
(4)  5 ft. core oven.
(5)  All cranes and overhead track covering the following:

(a)  1-18 ft. span traveling crane with 2,000 lb. electric hoist and attached motor.

(b) 1-41′ 4¼″ span traveling crane, 10,000 lb. capacity, and 3 attached motors.

(c) 1-41′ 4¼″ span traveling crane, 10,000 lb. capacity, and 3 attached motors.

(d) 150 ft. double traveling crane track for cranes specified in (b) and (c) above, together with runways and supports.

(e) Double track approximately 35 ft. long supporting (a) above, together with runways and supports.

(6) 1 cupola.

(7) 1 cupola blower and 1 motor.

(8) 2 core cars.

The master found that all the property conceded to be that of plaintiffs, together with the property in dispute as described in the stipulation, with the exception of the wooden shelving in the pattern storage room, was part of the real estate, title to which was in plaintiffs, and recommended that a permanent injunction issue, enjoining defendant from dismantling or removing any part thereof from the premises. Objections to the master's report were overruled. These objections were allowed to stand as exceptions. The exceptions were likewise overruled and the chancellor decreed that the temporary injunction be made permanent and that judgment be entered against defendant for costs. Defendant prosecutes this appeal for the purpose of reviewing the decree.

In the year 1923 V. F. Bendixen was the owner of the real estate commonly known as 2300–24 Bloomingdale avenue, Chicago, and in that year he erected thereon a building designed and adapted for use and operation as a foundry. He then installed therein all of the equipment and machinery in dispute and operated the property as a foundry plant. On May 14, 1927 Bendixen executed and delivered a trust deed to the Noel State Bank, as trustee, to secure the payment of a loan of $40,000. The trust deed conveyed the premises ''to-

gether with all cranes, overhead tracks, wiring and any other machinery or equipment attached to said premises; and also together with all buildings, improvements and appurtenances thereunto attached or belonging, including all window screens, curtain fixtures, window shades, door screens, furnaces, ranges, gas and electric light fixtures, steam and other apparatus, and any and all fixtures which may be placed in any building now erected or thereafter standing on said premises . . .'' Thereafter Bendixen organized the Bendixen Foundry Corporation and conveyed the real estate to it subject to the trust deed. Bendixen and the corporation defaulted in the payments required to be made under the terms of the trust deed and in 1932 a bill to foreclose was filed in the superior court of Cook county. A decree was entered on December 13, 1932, finding the trust deed to be a first and paramount lien. The decree directed that if the amount found to be due was not paid within three days that the real estate, which was therein described'' . . . with all cranes, overhead tracks, wiring and any other machinery or equipment attached to said premises; and also together with all buildings, improvements and appurtenances thereunto attached or belonging . . . and any and all fixtures in any building standing on said premises, . . . should be sold and the proceeds applied on the mortgage indebtedness. On December 12, 1935, the master sold the real estate ''together with all cranes, overhead tracks, wiring and any other machinery or equipment attached to said premises, and also together with all buildings, improvements, and appurtenances thereunto attached or belonging, including all window screens, furnaces, ranges, gas and electric light fixtures, steam fixtures and other apparatus and any and all fixtures in any building standing on said premises'' to Katherine C. Easterly, the successful bidder. She was a nominee of the bondholders' protective committee, representing the bond-

holders secured by the trust deed. On August 10, 1933, while the foreclosure proceeding was pending and before the decree was entered, a petition in bankruptcy was filed in the federal district court against the Bendixen Foundry Corporation and a receiver was appointed. On October 5, 1939, the bankruptcy receiver sold all his right, title and interest in the "tangible personal property belonging to said estate" to William L. Falck. The receiver's bill of sale listed, among others, the following items of property:

1 lot of shelving and benches

1 5 ft. core oven

1 10 ft. core truck

1 18 ft. span traveling crane with 2,000 lb. electric hoist

1 cupola blower and motor

1 Whiting tumbling barrel with blower and motor

1 Whiting 45 ft. span traveling crane, 3000 lb. cap

1 Whiting 45 ft. span traveling crane, 20 tons cap

150 ft. double traveling crane track

On June 27, 1935, the trustee in bankruptcy sold his right, title and interest in and to the real estate in question to Majorie Beale. She was also the nominee of the bondholders' protective committee. The bondholders' protective committee organized a corporation known as the Bendixen Building, Inc., which corporation acquired the interest of Marjorie Beale and Katherine Easterly, thus merging complete title in itself. On September 14, 1933, the receiver who had been appointed in the State court filed his petition in the bankruptcy proceeding, asserting that the property sought to be sold was "tangible personal property" and was subject to the lien of the trust deed, and prayed that the bankruptcy receiver be ordered to turn it over to him. This petition was withdrawn on October 9, 1933 and no order was entered thereon by the bankruptcy court. On June 17, 1935, Falck, the purchaser at the bankruptcy sale, sold to T. L. Arzt, war-

ranting his title to all personal property then located in the foundry premises, and specifically describing, among a long list of items, the articles enumerated in the receiver's bill of sale. On June 27, 1935, the State court receiver leased the premises to T. L. Arzt for a term of three years commencing July 1, 1935, and ending June 30, 1938. On September 1, 1936, the defendant corporation was organized by Arzt, and took over the operation of the business. Arzt assigned the lease to defendant corporation. On June 17, 1935, Falck, by bill of sale, sold and delivered to Arzt some of the items in dispute, but not the dust arrestor and cupola. Arzt transferred his title to the so-called personal property to defendants. It is to be noted that the dust arrestor and cupola, two of the most important items in dispute, were not mentioned in the receiver's bill of sale or in the bill of sale from Falck to Arzt. On February 17, 1938, Bendixen Building, Inc., leased the premises to defendant for a term of one year commencing July 1, 1938, and ending June 30, 1939, and on May 2, 1939, Bendixen Building, Inc., leased the premises to defendant for a term of one year commencing July 1, 1939, and ending June 30, 1940. On November 1, 1939, Bendixen Building, Inc., conveyed the real estate to the plaintiffs subject to the then existing lease to defendant corporation. The language of this deed, after describing the property, reads: "together with a cupola and elevator located in said premises and without warranting the following: all of the right, title and interest of the grantor in and to all cranes, overhead tracks, wiring and any other machinery or equipment attached to said premises." Subsequent to the conveyance by Bendixen Building, Inc., to plaintiffs, defendant attorned to plaintiffs and occupied the premises as plaintiffs' lessee under the terms of the lease dated May 2, 1939.

Defendant grounds its claim to ownership of the disputed property on the bill of sale from Falck, the

purchaser of the bankruptcy receiver's right, title and interest, if any, in a portion of the disputed property. The first point urged by defendant is that "mere annexation to the realty of a gasoline plant, mills, building or other trade fixtures do not cause the same to become part of the realty." Its second point is that "such articles when erected, owned or purchased as personalty, are, removable, because they are trade fixtures." In *Joyner v. Mitchell*, 267 Ill. App. 427, 429, the court said:

"If machinery is intended for permanent use in carrying on the business for which the building was erected or is used, and as a permanent accession to the realty, it becomes a part of the realty on being installed thereon, and if such was the intention, it is immaterial that the machines may be removed and used elsewhere, and that they may be removed without injury to the building. This rule has special application to heavy machinery intended for the building and not intended to be moved from place to place though resting in position by its own weight, and to machinery which is a constituent part of a factory or shop and indispensable thereto, though not actually fastened." In the instant case the articles which defendant claims, were securely attached to the building and were purchased or made for the particular use to which they were appropriated in the building, and were especially adapted to that use. The master, in the presence of all the parties, viewed the disputed property. Paragraphs 16 to 23 inclusive of his report gives a detailed description of the items in dispute and the manner of their annexation and use. We find that the items in dispute were annexed to the real estate in such a manner as to become a part thereof and that it was intended that they should be a part of the real estate.

Defendant maintains that the plaintiffs and their grantors, by their conduct, have never claimed the right to possession or the right to rent for the articles in

dispute, and that they are estopped to claim ownership. It points out that plaintiffs (1) bid for the personal property, as personal property, in the bankruptcy court in the year 1933; (2) filed a claim in the bankruptcy court and received a payment as dividend from the proceeds of the sale of the personal property; (3) were informed of the claim of the defendant that it had bought and paid for the same on August 11, 1939, over 2 months before they (plaintiffs) purchased the real estate; (4) plaintiffs' attorney sought to purchase 4 essential fixtures and equipment on August 8, 1939, over 2 months before they purchased the real estate; (5) plaintiffs received the deed of November 1, 1939, wherein their immediate grantors refused to warrant the title to the personal property in dispute; and (6) plaintiffs never claimed the right to possession of the personal property in dispute. It is a fact that in 1933 Kenny, one of the plaintiffs, bid for some of the personal property in the bankruptcy proceeding. The bid was made through his attorney, but was withdrawn. Plaintiff Alice Held also filed a claim in the sum of $300, on which she received a dividend of $75.38 on June 27, 1935, and plaintiff Kenny filed a claim in the sum of $420, on which he received a dividend of $105.53 on the same date. These dividends were based on wage claims. The dividends were paid out of receipts from the sale of personal property not here in dispute. Plaintiffs had no interest in any of the property either at the time the bid was made and withdrawn or when the dividends on the wage claims were received. No act of theirs at that time could in any manner affect the title to the real estate as against the mortgagee. Kenny could have acquired no greater interest than the receiver in bankruptcy had to sell, even if he had been the successful bidder. The fact that on August 11, 1939, more than 2 months before plaintiffs purchased the real estate, plaintiffs were informed that defendant had bought some of the articles in dispute,

could not give defendant a title that it did not have. Such a notice could only be important where plaintiffs claimed some right by virtue of being an innocent purchaser. Plaintiffs do not base their case on a contention that they are innocent purchasers. The same observations apply to the statement that plaintiffs' attorney sought to purchase "four essential fixtures and equipment on August 8, 1939, over two months before they purchased the real estate." This action did not give defendant title to any of the articles in dispute. Their action in attempting to purchase some of the equipment does not estop them from asserting their claim. The situation of the defendant was not changed because of any action of the plaintiffs. Defendant relies on the sale by the bankruptcy receiver to Falck and the subsequent sale by the latter to the defendant. Nor does the fact that in the deed of November 30, 1939, plaintiffs' grantors declined to warrant the title to the personal property in dispute, weaken or strengthen the claim of either the plaintiffs or the defendant. If the articles in dispute were attached to the real estate in such a way as to be a part thereof, as we have held, then the fact that the grantors refused to warrant the title to such articles would not give title to the defendant. The sixth item mentioned under this point is that plaintiffs' grantors "never claimed the right to possession of the personal property in dispute." We are satisfied that the grantors, grantees and lessees recognized that the articles in dispute were a part and parcel of the real estate.

We have held that the items of property in dispute became a part of the real estate at the time of installation by Bendixen, the original owner. When he executed the trust deed, he conveyed not only the real estate but all the machinery and equipment as well. The mortgagor could not, by any act of his, change the character of the property from real estate to personalty, to the prejudice of the mortgagee. The mortgagor

did not do so or undertake to do so. When the Bendixen corporation became bankrupt the receiver in bankruptcy took the property of the bankrupt subject to all the equities and rights imposed upon it in the hands of the bankrupt. As stated in *West Side Trust & Savings Bank v. Lopoten,* 358 Ill. 631, 639, "after condition broken, the mortgagee is, as between himself and the mortgagor, the owner of the fee." At the time of the bankruptcy the foreclosure proceeding was pending. The receiver undertook to convey and could only convey such right, title or interest as he had. Some items which were, in fact, personal property, were sold, and none of these is claimed by plaintiffs. The machinery and equipment claimed by plaintiffs continued to be a part of the realty from the time of their inception. The receiver in bankruptcy had no power to sell the same, and he had no title to any of the real estate of which the machinery and equipment involved herein, constituted a part. Manifestly, Falck acquired only that title which the receiver had.

Defendant maintains that the items in controversy were treated by the parties to the negotiations for a lease, as personal property. In all of the leases the description of the real estate is followed by the words "and all buildings, improvements and appurtenances thereunto attached or belonging." The leases all provided that the lessors should have a lien on certain items of property therein described, none of which were included in the decree as being the property of plaintiffs. Plaintiffs argue that no lien is reserved to the lessors covering any of the specific items in dispute for the obvious reason that the defendant was not recognized as the owner of such property, and that consequently the reservation of a lien was unnecessary. We find that there is merit to this contention.

Defendant argues that plaintiffs have an adequate remedy at law, and that hence the complaint should be dismissed for want of equity. The rule is that equity

will take jurisdiction to enjoin waste, actual or threatened, without regard to the existence of an adequate remedy at law and without regard to the solvency or insolvency of the defendant. (*Williams v. Chicago Exhibition Co.*, 188 Ill. 19; *Davis v. Carsley Mfg. Co.*, 112 Ill. App. 112.)

Because of the views expressed, the decree of the superior court of Cook county is affirmed.

*Decree affirmed.*

HEBEL, P. J., and DENIS E. SULLIVAN, J., concur.