## 11814

### PLANTER'S BANK v. LUMMUS COTTON GIN CO.

#### (128 S. E., 876)

1. MORTGAGES—MORTGAGEE, UNSATISFIED BY FORECLOSURE, MAY SUE FOR DAMAGES ONE WHO HAS IMPAIRED VALUE OF SECURITY BY REMOVING FIXTURES.—After foreclosure and ascertainment of deficiency due mortgagee, he may maintain action to recover damages of one who has impaired value of his security by removing fixtures from mortgaged premises.

2. MORTGAGES—FIXTURES SUBJECT TO MORTGAGE LIEN, THOUGH ANNEXED TO MORTGAGED PROPERTY AFTER EXECUTION OF MORTGAGE.— A fixture annexed to property covered by mortgage becomes subject to lien of mortgage, notwithstanding annexation took place after mortgage was executed.

3. FIXTURES—ELEMENTS NECESSARY TO MAKE CHATTEL PART OF REALTY STATED.—As between vendor and vendee, or mortgagor and mortgagee, it is necessary, to make chattel part of realty, that there be an actual or constructive annexation, an appropriation to use or purpose of that part of the realty with which it is connected, and intent to make it a permanent accession to freehold.

4. FIXTURES—INTENT TO MAKE CHATTEL PART OF REALTY INFERABLE FROM NATURE OF ARTICLE, RELATION OF PARTY AFFIXING, AND MODE AND PURPOSE OF ANNEXATION.—Intent to make chattel a permanent accession to freehold necessary to constitute it a fixture may be inferred from nature of article affixed, relation and situation of party making annexation, and structure and mode of annexation, and purpose and use for which made.

5. FIXTURES—GINNING MACHINERY, INSTALLED ON PREMISES AFTER EXECUTION OF MORTGAGE, HELD SUBJECT THERETO.—Ginning machinery, installed on premises after execution of real estate mortgage thereon, becomes fixtures and subject to mortgage lien, notwithstanding chattel mortgage on machinery, where contract under which such machinery was purchased, providing that it should not become a

fixture to any realty, had been discharged by payment of the purchase price; such provision being for benefit of seller rather than third party mortgagee.

6. FIXTURES—INTENT OF MORTGAGOR MAKING ANNEXATION OF CHATTEL TO REALTY CAN BE INQUIRED INTO, ONLY IF MADE AFTER EXECUTION OF MORTGAGE.—As between mortgagor and mortgagee, intent of party making annexation of chattel to realty can be inquired into, only if annexation was made after execution of mortgage.

7. FIXTURES—INTENT IN MAKING ANNEXATION HELD UNDER EVIDENCE FOR JURY.—Evidence that gin company, after selling ginning machinery under contract which provided that it should not become a fixture to any realty, and accepting mortgage on realty as security for purchase price, sold to same purchaser an engine, taking chattel mortgage on both engine and machinery previously sold, and evidence that president of bank which had mortgage on realty to which machinery was installed, was president of insurance company, insured machinery for gin company, as mortgagee, together with other conduct of officers of bank *held* to raise question for jury as to intent of both bank and purchaser as to character of chattel, whether fixture or not.

8. FIXTURES—WAIVER OR ESTOPPEL OF BANK TO ASSERT LIEN ON FIXTURES ANNEXED AFTER EXECUTION OF MORTGAGE HELD FOR JURY.—Evidence that gin company, after taking chattel mortgage on machinery installed on realty on which bank held mortgage, went to president of bank, who was also president of insurance company, and from him secured insurance on such machinery, without protest being made that machinery was being covered by bank's mortgage, *held* to raise question for jury whether bank had waived or was estopped to assert its lien.

9. MORTGAGES—MEASURE OF DAMAGES FOR DIMINUTION IN VALUE OF MORTGAGE SECURITY STATED.—Measure of damages for impairing value of security by removing fixtures from mortgaged premises is the diminution in value of security, not exceeding amount remaining due mortgagee after foreclosure or value of fixtures removed.

Before MAULDIN, J., Abbeville, March, 1924.   Reversed and remanded for new trial.

Action by the Planters' Bank against the Lummus Cotton Gin Company.   Judgment for the plaintiff and defendant appeals.

*Mr. J. M. Nickles,* for appellant, cites: *Fixtures, intention and mode of attachment:* 100 S. C., 21; 97 S. C., 189; 81 S. E., 505; 95 S. C., 221; 78 S. E., 960; 51 S. C.,

1; 28 S. E., 20; 33 S. C., 339.   *Fixture mixed question of law and fact:*   95 S. C., 221; 78 S. E., 960.

*Mr. Wm. P. Greene,* for respondent, cites:   *Fixtures, intention and mode of attachment:*   1 Bail., 541; 3 Hill 331; 2 Strob., 478; 120 S. C., 485.

July 30, 1925.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

Action for $5,000 damages, actual and punitive, on account of the alleged wrongful act of the defendant in removing and converting to its own use certain gin machinery, from a ginhouse and lot belonging to one J. P. Clinkscales. The plaintiff held a real estate mortgage upon the ginhouse and lot, executed before the machinery was installed on the lot. The defendant held a chattel mortgage upon the machinery executed after it had been paid for and installed. The plaintiff contends that the machinery was installed in such a way as to constitute "fixtures," and came under the lien of its real estate mortgage then in existence, upon its annexation to the premises. The defendant contends that it remained personal property, and was subject to its chattel mortgage, under which it was seized and sold. The case was tried before his Honor, Circuit Judge Mauldin, and a jury. The plaintiff withdrew its demand for punitive damages. At the close of the evidence, upon motion of counsel for the bank, the Circuit Judge directed a verdict in its favor, holding that there was no issue to be submitted to the jury. The amount of the verdict is not stated in the record of appeal, but it is assumed to have been, from the direction of the Court, for the amount of the debt due by Clinkscales to the bank, less a credit for the amount of the proceeds of the sale of the real estate under foreclosure proceedings. Defendant appeals.

There appears to be no controversy as to the following facts:   In February, 1920, one J. P. Clinkscales purchased

from the Lummus Gin Company, a complete ginning outfit, consisting of engine, gins, press, and other accessories, of the business of a "custom" ginnery. The written contract, evidencing the purchase, provided for the reservation of title to the property in the gin company until the outfit should be paid for. It contained also the following provisions:

"The machinery herein described is to be located and operated at or near 4 miles east of Lowndesville, State of South Carolina, *and is not to be a fixture to any realty,* and is not to be moved from the county aforesaid during the life of this agreement or without the written consent of the seller."

Later Clinkscales changed his mind as to the location of the ginnery, and on June 4, 1920, purchased from one R. R. Tolbert, Jr., a lot containing one acre of land, situated east of Abbeville, some 20 miles from the Lowndesville location. Upon this lot there was a ginhouse and an old gin equipment which had been used by Tolbert as a public ginnery for about 10 years. The price agreed upon for the lot was $1,500. Clinkscales borrowed from the plaintiff bank the money with which to pay for it, and gave the bank a mortgage upon the lot to secure the payment of his note for $1,570, describing the property as one acre of land situated "and having a ginhouse thereon, together with boiler and gin equipment."

About a month after the purchase of the Tolbert lot, the greater part of the machinery purchased from the gin company (all except the engine) arrived in Abbeville. Clinkscales, in order to pay for it, borrowed an additional sum of money from the bank and gave, as security for his note therefor, a mortgage upon a farm owned by him in McCormick County. He applied the proceeds of this second loan to the payment of the machinery which had arrived, and installed it upon the Tolbert lot covered by the real estate mortgage which he had given to secure the first loan

of $1,500.   The bank did not take a mortgage upon this machinery.   Some weeks later the engine arrived.   The bank declined to make any further advances to Clinkscales. In order to enable Clinkscales to obtain the engine from the railroad company, the gin company agreed to allow him to do so upon his giving a mortgage upon it for the purchase price, some $3,300.   He then installed it on the Tolbert lot. The note secured by mortgage upon the engine not having been paid at maturity, the gin company granted further indulgence to Clinkscales upon his giving, as additional security, a mortgage upon the other machinery which had been paid for and installed.   About two years thereafter, the note for the engine, secured by a mortgage upon it, and by the additional mortgage upon the other machinery, not having been paid, the gin company instituted claim and delivery proceedings against Clinkscales, recovered possession of the entire outfit, sold it at public outcry under the two mortgages, and moved it away.   Thereafter the bank foreclosed its mortgage upon the lot, realizing only $177, and instituted the present action against the gin company for damages, claiming that when the machinery, which Clinkscales had paid for, was installed upon the lot, upon which the bank held a mortgage, in existence at that time, the machinery became fixtures, subject to the original $1,500 real estate mortgage of the bank; that the gin company, in selling and removing it, had converted the same to their own use, and became thereby liable in damages to the bank.   The engine covered by the mortgage of Clinkscales to the gin company is not involved in this litigation; the bank making no claim to it.

It does not admit of doubt, that *if the real estate mortgage was a lien upon the machinery,* placed upon the premises after the execution and prior to the date of the additional chattel mortgage given to the gin company to secure payment of the note for the engine, the lien of the real estate mortgage would be superior to the lien of the defendant's

chattel mortgage, and the defendant, having removed the machinery, would be liable in damages to the plaintiff, to the extent of the diminution in the value of the bank's security caused thereby.

That the plaintiff had ample authority for bringing the action for damages appears from the case of *Heath v. Haile,* 45 S. C., 642; 24 S. E., 300, which was a case of this very nature. There the Court says, referring to *Lavenson v. Standard Soap Co.,* 80 Cal., 245; 22 P., 184; 13 Am. St. Rep., 147:

"A mortgagee, after he had foreclosed his mortgage and ascertained what deficiency remains due him, may maintain an action to recover damages against a person who had impaired the value of the security afforded by his mortgage by removing fixtures from the mortgaged premises."

That an annexation to the property covered by a mortgage, if a fixture, becomes subject to the lien of the mortgage, notwithstanding the fact that it took place after the mortgage was executed, appears to be settled.

Referring to the case of *Annely v. DeSaussure,* 12 S. C., 517, the Court, in the case of *Heath v. Haile,* 45 S. C., 642; 24 S. E., 300, says:

"That case also recognizes and affirms the doctrine that where improvements, which become a part of the freehold, are put upon the mortgaged premises, either by the mortgagor or a purchaser from him [we interpolate, which necessarily is subsequent to the execution of the mortgage]; such improvements become subject to the lien of the mortgage, and constitute a part of the security for the mortgage debt; and the same doctrine was again recognized when the case came again before the Court. See 17 S. C., 394."

The determinative issue, therefore, is: *Did the lien of the plaintiff's real estate mortgage attach to the machinery,* upon its installation, after the execution of the real estate mortgage, and before the execution of the defendant's chat-

tel mortgage upon it? This involves a consideration of the much discussed, confused, and confusing subject of "fixtures." The principal cause of the confusion and apparently conflicting interpretations of the law is a failure to recognize the fact that there are so many various relations under which the question may arise; that the same rule does not apply to all, and in deciding the question which may have arisen under one relation by the rule established as applicable to some other.

In *Montague v. Dent,* 10 Rich. Law, 135; 67 Am. Dec., 573, the Court says:

"So various are the considerations which enter into the interpretation of the law fixtures, dictating varying and opposite conclusions as to the same or like articles, which may become the subject of controversy, that an adjudicated case may fail to be of any authority, where the subject-matter of contest may be the same, *as the particular case must be considered with reference to the relation of parties.* * * *"

The various relations under which the question arises may be roughly divided into two classes: (1) Where the subject-matter of the controversy has been placed upon the premises by the owner of the fee-simple title; (2) where it has been so placed by one owning an estate less than a fee simple. To the first class belong the relations of vendor and vendee, mortgagor and mortgagee, personal representative and heir or devisee, vendee of the real estate and purchaser or mortgagee of the chattel from the late owner, and other relations. To the second class belong the relations of owner of the fee or his heirs or devisees and life tenant, remainderman or reversioner and life tenant, landlord and tenant, licensor and licensee, and perhaps others. The rules applicable to these two classes are not the same. Cases involving the relations suggested in the second class are of little assistance, rather the contrary, in deciding the question arising in relations of the first class.

It is considered more probable that an improvement, placed on the premises by the owner of the fee, was placed there for the betterment of his estate and during its continuance, which is deemed perpetual. On the other hand, it is considered more probable that an improvement, placed on the premises by one who did not own the fee, was placed there for his personal convenience and during the *limited* term of his estate. As a matter of public policy, that the life tenant, tenant for a term or license, may not suffer the estate to go to waste, great liberality is extended to them in reference to their intention. Trade fixtures annexed to the premises by a tenant have uniformly been considered not to be fixtures, and to be removable by the tenant at the end of his term, a liberality not extended to relations of the first class above referred to.

It is generally conceded that the rules applicable to the relation of vendor and vendee are alike applicable to that of mortgagor and mortgagee, for the reason that the ultimate prospect is that the mortgage may be foreclosed and a conveyance, in the right of the mortgagor, executed by direction of the Court which orders the sale.

In the relation of vendor and vendee (mortgagor 3, 4 and mortgagee being identical), the following elements are necessary to make a chattel a part of the realty: (1) Actual or constructive annexation of the chattel to the realty or to something appurtenant thereto; (2) appropriation of the chattel to the use or purpose of that part of the realty with which it is connected; (3) the intention of the party making the annexation to make the chattel a permanent accession to the freehold, this intention being inferred from the nature of the article affixed, the relation and situation of the party making the annexation, the structure and mode of annexation, and the purpose or use for which the annexation has been made. 26 C. J., 667. *Teaff v. Hewitt,* 1 Ohio St., 511; 59 Am. Dec., 634.

In the earliest cases, particularly in England, great stress

is laid upon the manner in which the addition is attached
to the premises, whether physically fastened or not, and
whether or not the freehold or the addition will be injured
in the removal.    The more modern decisions have relaxed
this requirement to a considerable extent, holding, parti-
cularly in reference to heavy and permanent additions, that,
although not actually annexed, they may be considered fix-
tures when simply held in place by the force of gravity.
This appears the more reasonable conclusion.    There should
not be a line of cleavage between two additions of the same
character and purpose, based upon the accidental fact that
one is light and has to be fastened down, while the other,
on account of greater weight, is held in place by that weight.
The tendency, therefore, is to consider that the fact of ac-
tual fastening is, in itself, but a slight indication that the
article is a fixture, when, notwithstanding the apparent
permanent character of its annexation, it is susceptible of
removal without injury to the premises or to the structure
constituting a part of the premises to which it is attached,
or to the article itself.

"The consideration upon which the more modern cases
lay the greater stress, as indicating the intention of the
annexor, and as so determining the character of the article
as a fixture *vel non,* is its character, as related to the uses
to which the land has been appropriated; it being regarded
as a fixture only in case there is a correspondence between
its character, and consequently its prospective use, and the
use to which the land is devoted."    1 Tiff. R. P. § 234; 2
Dev. R. E. (3d. Ed.), 2225.    *Wolff v. Sampson,* 123 Ga.,
400; 51 S. E., 335.    *Miller v. Plumb,* 6 Cow. (N. Y.),
665; 16 Am. Dec., 456.    *Carpenter v. Walker,* 140 Mass.,
416; 5 N. E., 160.

In *Fairis v. Walker,* 1 Bailey, 540, in which the relation
was that of vendor and vendee, the plaintiff sold his planta-
tion to the defendant, and at the time of the sale the gin
was in the ginhouse on the land and attached to the gears.

After the defendant went into possession under the sale, the plaintiff, the vendor, brought an action in trover for the gin.   There was evidence tending to show that the plaintiff intended to sell and that the defendant believed he was buying the gin with the land.   Not very much attention was paid by the Court to this circumstance.   They drew a distinction between the rule on the subject as between the heir and the executor, or between the vendor and the vendee, and as between landlord and tenant, or the executor of a tenant for life and the remainderman, declaring that the rule *was more rigorous* in the former than in the latter instances. They say:

"In relation to the former, all things which are necessary to the full and free enjoyment of the freehold, and which are in any way attached to it, are held to be fixtures, and pass with it.   With regard to the other class, articles used for a trade or manufacture, or for the temporary convenience of the occupant, and which may be detached from the freehold, without injuring it, are held not to be fixtures. What ought to be considered a fixture depends, I think, materially upon the nature of the freehold sold.   If a plantation, then all such things  *  *  *   used in the management of a farm would pass.   If a freehold fitted up for a trade of·a particular kind, or for manufactures, is sold to a person intending to follow the same business, then all the machinery necessary to the trade, or manufacture, so intended to be carried on, would pass.   I therefore instructed the jury that, if they thought the cotton gin necessary to the full and free enjoyment of the freehold, sold for agricultural purposes, it passed to the defendant under the sale by plaintiff."

The Appellate Court "unanimously" concurred in this exposition by Judge O'Neall, the trial Judge.

In *Nimmons v. Moye* (Ms. Decision 1829) 1 Rice Dig., 317, it was held that, on the death of the annexor, the machinery attached to a cotton gin which is in operation goes

with the freehold to the heir at law or distributees, and not to the executor or administrator. This case is quite fully referred to in *McKenna v. Hammond*, 3 Hill, 332. See, also, *McClintock v. Graham,* 3 McCord, 554. *Hughes v. Edisto Co.,* 51 S. C., 1; 28 S. E., 2.

In *McKenna v. Hammond,* 3 Hill, 331; 30 Am. Dec., 366, the relation involved was that of a purchaser from the administrator of the deceased owner and the purchaser of the real estate at a judicial sale. When the intestate died, a ginhouse and running gear were on the premises. The administrator sold the running gear to the plaintiff. The land was thereafter sold at judicial sale and purchased by the defendant. The running gear was in place at the time of the sale. The plaintiff then brought trover for the running gear. Upon the authority of *Nimmons v. Moye* and *Fairis v. Walker, supra,* the running gear was held to be a fixture, passing with the freehold at the sale.

In *Bratton v. Clawson,* 2 Strob., 478, the relation involved was that between the purchaser of the owner's land at Sheriff's sale and the purchaser of a cotton gin in the ginhouse at the time of the sale of the land at Sheriff's sale on the day after the land sale took place. The defendant, purchaser of the gin, removed it from the ginhouse, and the plaintiff, purchaser of the land, sued in trespass for carrying off the gin. The opinion states that the gin was attached to the running machinery in the usual way by a band. The Court said:

"That a cotton gin in its place, i. e., connected with the running works in the ginhouse, is a fixture that passes to the purchaser of the house, was before decided in the very case [3 Strob., 127, decided before, but reported after]. The same law of fixtures was before laid down in *Fairis v. Walker,* 1 Bailey, 540."

In *Liddell v. Cork,* 120 S. C., 481; 113 S. E., 298, the contest was between the sellers of machinery, cotton gin, and sawmill equipment, installed upon the owner's farm

and operated for plantation purposes, covered by a chattel mortgage, and a grantee of the land under a deed from the owner. The main point of controversy was whether the purchaser of the land was charged with notice of the recorded chattel mortgage. It was held that he was. In the course of the opinion it was said:

"Placed in houses upon the land, installed in the usual manner, and used and operated for plantation purposes, as between Baird, the owner of the land, and his grantees Cork and McInnes, the articles * * * were clearly fixtures, and consequently realty. Had Baird, after selling his improved farm to purchasers who attended his auction sale upon the premises, attempted to dismantle his ginhouse and sawmill and remove this machinery, annexed in the usual manner to the freehold, we apprehend that no Court would have hesitated to enjoin him."

In *Saye v. Hill,* 100 S. C., 21; 84 S. E., 307, the contest was between the grantees of the owner of a lot and a licensee. The lot had been conveyed by the owner to a railroad company for a depot site. The company did not use it for that purpose, but it was generally regarded as its property. The defendant obtained a license from the railroad company to erect a cotton gin, grist mill, and planing mill on the lot. Buildings were erected, machinery installed, and wells bored and fitted with pumps and pipes for use in running the machinery. This was done with the knowledge and consent of the owner of the lot who had conveyed it, with the condition stated to the railroad company. The owner brought suit against the railroad company and recovered possession of the lot, upon the ground that it was not being used for the purpose for which it had been conveyed. It was adjudged in that suit that the railroad company's licensee have a certain time within which to remove the buildings which he had placed on the lot. Nothing was said in the decree about the machinery. The former owner conveyed the lot to his daughters, and thereafter and after the licensee

of the railroad company had been notified not to trespass upon the lot, he went upon it and removed an engine and grist mill and took up and carried off the pumps and pipes out of the well. The grantees of the former owner then brought suit against the licensee for damages for the conversion of the property and for trespass. The plaintiffs based their claim for damages upon the contention that the engine and other machinery removed had been so attached to the freehold as to have become fixtures and passed to them under their deed to the lot. It appeared that the machinery had been attached to the real estate with bolts and timbers embedded in the ground as firmly as could have been done.

The defendant requested the charge:

"That where a structure is placed upon land, not to promote the convenient use of the land, but to be used for some temporary purpose, external to the land, and the land is used only as a foundation, because some foundation is necessary for the business, then the structure and its belongings are not fixtures."

The trial Judge refused this request, the jury found for the plaintiffs, and on appeal this Court held error in such refusal, saying:

"While the manner in which a thing is attached to the soil may be of some value in determining whether it is a fixture or not, it does not afford an absolute or conclusive test. The intention with which it is so attached is usually a more controlling factor. Yet all the circumstances should be considered, especially as they throw light upon the intention. Houses are frequently built and expensive machinery installed therein with every appearance of permanency, yet it is done under a license from the owner of the soil, or under a lease thereof, and under agreement for and with the intention of removal at the expiration of the license or lease. In such cases, they are not fixtures."

It will be observed that this case involved the relation of licensor and licensee, in which the rule is different from that applicable to the relation of vendor and vendee.

In *DeLaine v. Alderman,* 31 S. C., 275; 9 S. E., 950, 952, the Court says (quoting Jones on Mortgages) :

"The purpose of annexation, as well as the mode of it, determines the character of the property annexed. The same mode may exist, and yet the property be personal in one case and real in another. * * * The general principle to be kept in view, underlying all questions of this kind, is the distinction between the business which is carried on upon the premises and the premises themselves, or *locus in quo.*"

We do not think therefore that there can be a doubt but that ordinarily, as between vendor and vendee, or mortgagor and mortgagee, the machinery in question became fixtures and were covered by the mortgage. The only point of controversy is whether this conclusion is affected by certain circumstances peculiar to this case.

It is contended by the defendant that the machinery cannot be considered fixtures, for the reasons that in the contract of purchase the vendee Clinkscales agreed that the machinery would not be "a fixture to any realty," and that after it had been installed the vendee executed a chattel mortgage upon it in favor of the defendant.

It is not uncommon for the seller of machinery, under a reservation of title contract to insist upon an agreement by the buyer that it shall not be deemed a fixture and such stipulations are generally valid; the machinery retaining its character as personal property. But it is universally and logically held that such a stipulation is for the benefit of the seller, and that when the buyer's obligation to him has been discharged, it is no longer operative. As is declared in 26 C. J., 673 :

"Conceding that the article annexed retains its chattel character by reason of the agreement, it loses such charac-

ter as soon as the separate interest of the beneficiary under the agreement is relinquished."

It appears in the case at bar that the obligation of Clinkscales to the gin company for the purchase price of the machinery was discharged before it left the hands of the carrier; that it was then installed upon the premises as if there had been no reservation of title contract, and no agreement that it should retain its chattel character.

If the machinery was installed, free of this agreement that it was to retain its chattel character, under circumstances that determined its character as a fixture, the fact that thereafter the owner may have executed a chattel mortgage upon it, without the knowledge and consent of the real estate mortgagee, clearly cannot reinstate its chattel character, after it had been lost by the extinguishment of the buyer's obligation to the gin company. There are certain considerations, however, that lead us to the conclusion that there was error in the direction of a verdict which demands a reversal and a new trial.

While it is true that the holder of a mortgage executed before the annexation of the fixtures has a lien upon them as well as upon the premises to which they have been annexed, his position is not quite as favorable as that of the holder of a mortgage executed *after* the annexation. In the former instance the mortgagee will have advanced nothing upon the existence of the fixtures; he loses nothing of his original security; his mortgage does not cover after-acquired property; and the intention of the party who made the annexation may be inquired into. In the latter, the mortgagee will have made advances upon the strength of the security then existing, including the fixtures which possibly may be of greater value than the premises. In such case the mortgagor will not be heard to declare what his intention was; his acts speak and his intention is inferred from them.

In the case at bar the gin company in its contract with Clinkscales had insisted upon the agreement that the machinery should not be considered fixtures, and, upon a misapprehension of the continuing effect of that agreement after the buyer's obligation had been extinguished, was induced, for a valuable consideration (the extention of credit upon the engine contract), to take a mortgage upon the machinery which we assume Clinkscales thought he had the right to give. In this respect the gin company occupies the position of having given more than the bank gave. While the agreement referred to was not sufficient, so far as the gin company was concerned, to establish a retention of the character of the machinery as chattels, taken in connection with other circumstances to be mentioned, it bore upon the intention of Clinkscales. *Carpenter v. Allen,* 150 Mass., 281; 22 N. E., 900.

The execution by Clinkscales of a chattel mortgage upon the machinery, while not at all binding upon the bank, evidenced his intention, and indicated that the agreement contained in the sales contract had not been altered.

Now, what do we find in the evidence upon the question of the bank's attitude towards the machinery? It held a mortgage upon the premises to secure the first note of $1,500, then advanced the price of the machinery and took a mortgage, not upon the machinery, but upon a tract of land in McCormick County, which was thought ample security.

There is evidence tending to show that, when the representative of the gin company notified the bank that they held a mortgage upon the machinery, the office of the bank said, "If you have, we are in a bad fix"; that it was the best thing to do to take the machinery and give Clinkscales a clear receipt. The evidence is denied by the bank.

After the gin company had taken a mortgage upon the machinery, it applied to the president of the plaintiff bank, who was also president of the insurance company, and secured from him a policy in his com-

pany upon this very machinery.  Under the case of *Hughes v. Ins. Co.* (S. C.), 126 S. E., 125, upon the authority of *Madden v. Ins. Co.,* 70 S. C., 295; 49 S. E., 855, the knowledge of the president of the bank is imputable to the bank, although he was then acting for the insurance company (a doctrine with which the writer does not agree, though recognizing these cases as authority until overruled).  The president of the bank then made no claim that the machinery was covered by his mortgage.  It was a question for the jury whether by this conduct the bank waived its claim as now presented, or was estopped from setting it up by their inducing the gin company to pay the premiums and continue its indulgence by the extension of credit to Clinkscales.

There was evidence also to the effect (denied by the bank) that the president of the bank was present at the sale, and there made no protest against the sale, or gave notice of any claim the bank had.

It has been held that the issue of "fixtures" is a mixed question of law and fact, and that the intention in the annexation, a matter of fact, should be submitted to the jury. As is said by the Court in *Hurst v. Furniture Co.,* 95 S. C., 221; 78 S. E., 960:

"A fixture involves a mixed question of law and fact. It is incumbent on the Court to define a fixture, but whether it is such in a particular instance depends upon the facts of that case, unless the facts are susceptible of but one inference.  In modern times the question whether the article is to be regarded as a fixture depends generally upon the intention of the parties in the particular case."

This case involved the relation of landlord and tenant, in which, as in cases involving the relation of life tenant and remainderman or reversioner and licensor and licensee, the intention with which the annexation was made is always an important if not a controlling factor.  But in cases involving the relation of vendor and vendee and mortgagor and mortgagee and others, the intention is inferred from the

nature of the article, the relations of the parties, the structure and mode of annexation, and the purpose or use for which the annexation was made.    Nevertheless, all the facts and circumstances must be submitted to the jury, unless they are susceptible of only one inference.

We think, therefore, that in the case at bar the defendant was entitled to go to the jury upon the questions of the intention, both of the bank and Clinkscales, as to the character of the machinery, as to a waiver by the bank, and as to estoppel.

There is another matter to which attention should be called: The Circuit Judge, it appears, fixed the measure of damages as the amount due upon the bank's mortgage less the proceeds of the sale of the ginhouse and lot upon foreclosure.    The measure of damages was the diminution in the value of the bank's security, not exceeding such balance; in other words, the value of the machinery removed.    It might, after two years' use, have been worth much less than the above balance.

The views herein expressed are not entirely in accord with the decision in *Padgett v. Cleveland,* 33 S. C., 339; 11 S. E., 1065.    The opinion in that case was written by Mr. Justice McGowan.    The other Justices concurred in the result only.    We consider it as simply determining the issues in that particular case, and not as authority controlling the decision of subsequent cases.

The judgment of this Court is that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court for a new trial.

MR. CHIEF JUSTICE GARY and MESSRS. JUSTICES WATTS and MARION and MR. ACTING ASSOCIATE JUSTICE R. O. PURDY concur.