In re THEODORE A. KOCHS CO. et al.
EFAICH CO. v. WICK et al.
No. 7555.

Circuit Court of Appeals, Seventh Circuit.
May 16, 1941.

Rehearing Denied June 19, 1941.

Isaac M. Mills and Harry H. Ruskin, both of Chicago, Ill., for appellant.

Leo J. Powers, of Chicago, Ill., for appellee.

Before SPARKS and KERNER, Circuit Judges, and LINDLEY, District Judge.

KERNER, Circuit Judge.

The petitioner, Efaich Company, purchaser of a real estate mortgage executed by the bankrupt, Theo. A. Kochs Company, claimed a lien on the plant machinery and equipment located on the premises or in the alternative asked to have the lien attach to proceeds of a sale consummated by the respondent, the trustee in bankruptcy.

The referee in bankruptcy denied the claim, the District Court made an order approving the referee's findings and decision, and petitioner appeals.

The Theo. A. Kochs Company acquired land, constructed its own buildings thereon, equipped them with boilers, engine and generator to produce electric current for light and power, and installed therein plant machinery and equipment essential to the carrying on of its manufacturing processes. The plant machinery and equipment consisted mainly of (1) huge air blowers and dust collecting pipes, (2) heavy machines used in the production or manufacturing process, and (3) shaftings, pulleys, beltings and motors of considerable size and weight, used to drive the machines described in (2). The evidence shows that although this property was substantially attached or fastened to the premises and formed an indispensable part of the factory, nevertheless it was removable without material damage to itself or to the freehold.

In 1934 the Theo. A. Kochs Company borrowed $100,000 from the Federal Reserve Bank of Chicago, for which it executed and delivered the mortgage involved here. The mortgage covered the land and buildings, together with the following described property:

" * * * the tenements, hereditaments and appurtenances thereunto belonging * * * and all apparatus and fixtures of every kind for the purpose of supplying or distributing heat, light, water or power, and all other fixtures in, or that may be placed in any building now or hereafter standing on said land, and also all the estate, right, title and interest of the said party of the first part of, in and to said premises.

"To Have and to Hold the above described premises, with the appurtenances and fixtures, unto the said party of the second part, its successors and assigns, forever. * * * "

It is admitted that the boilers, engine and generator are covered by the mortgage above, as are the motor and shafting section operating the elevator. Our problem is to determine whether the plant machinery and equipment is subject to the lien of the mortgage.

In 1938 the mortgagor filed a voluntary petition to reorganize under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, and alleged that its liabilities consisted of

"approximately $63,000 not yet due but secured by a mortgage on its fixed assets." A reorganization was not effected, and on January 26, 1940, an order of adjudication in bankruptcy was entered. April 16, 1940, the respondent (trustee in bankruptcy) filed his petition for leave to sell all of the property of the bankrupt either free and clear of all liens or subject thereto. This petition described the bankrupt's land and buildings as real estate, and the remainder of the property as personal property. It further stated that the real estate was subject to the lien of the mortgage above referred to, and that the personal property was free of liens except for two small conditional sales liens. April 26, 1940, the Federal Reserve filed its answer to the respondent's petition, asserting thereby that it was the owner of the mortgage in question and asking that its rights thereunder be observed. The answer further stated that with respect to the personal property as described in the respondent's petition, the Federal Reserve was without knowledge sufficient to form a belief as to the truth of the allegations that the personal property was free of liens except for the two small conditional sales liens.

On May 7, 1940, the date of the bankruptcy sale, the personal property of the bankrupt, including the plant machinery and equipment in question, was sold to a purchaser for $50,100. At the sale the trustee announced that the personal property was free and clear of all liens except the two small conditional sales liens. Although the officers and counsel of the Federal Reserve were present, they made no statement that the real estate mortgage covered any of the property sold for $50,100. May 14, 1940, the petitioner purchased the mortgage from the Federal Reserve, thereafter intervened in the bankruptcy proceedings, and on May 29, 1940, filed its amended petition stating that the mortgage covered the plant machinery and equipment and asking that their removal from the premises be enjoined or that the lien thereon be transferred to the proceeds of the sale. It has been stipulated that of the sum of $50,100 realized by the respondent at the sale, some $15,087 is allocable to the plant machinery and equipment.

At the hearing before the referee in bankruptcy, parol evidence was adduced by respondent as to conversations and negotiations prior to the execution of the real estate mortgage. The bankrupt's auditor testified that at first a loan of $175,000 was contemplated on the strength of the land, buildings, machinery, stock-in-trade and accounts receivable, but that in the end the Federal Reserve decided to make a real estate loan of $100,000. The assistant vice-president of the Federal Reserve testified that in the first instance the Federal Reserve asked for a mortgage on the land and buildings, together with a chattel mortgage on the "movable machinery and equipment and their hand tools," but that finally it reconsidered and made the loan on the security of the land, buildings and appurtenances only. In this connection the written resolution of the Executive Committee of the Federal Reserve authorized the making of a mortgage covering the "land, buildings and fixed equipment." The assistant vice-president of the Federal Reserve and its counsel were also permitted to testify that it was their understanding that the mortgage would cover only the real estate and such other property as could not be removed "without in any way defacing or mutilating the premises" or "without doing measurable damage to the real estate."

In addition there is testimony by the bankrupt's auditor to the effect that after the loan he prepared monthly balance sheets and mailed them to the Federal Reserve. These financial reports contained a footnote referring to the mortgage, which did not appear in connection with the item "Plant Machinery and Equipment" but which did appear in connection with the two items "Land" and "Buildings." The record also discloses testimony that the motors, shaftings, pulleys and beltings are part of the equipment used in the production or manufacturing process. The theory, as explained by respondent's expert witness, is that the distribution of power ends when it enters the motors that drive the production machines. The expert witness for the petitioner states that this apparatus is really power equipment, advancing the theory that the distribution of power ceases only when it reaches the production machines.

It is presumed without more, when machinery is installed which is indispensable to the operation of the factory, that the owner intended to affix the machinery permanently to the premises. In our case the nature of the machinery, the manner of its attachment, its essential re-

lation to the business, and the fact that the annexor owned both the plant and the machinery are manifestations that at the time of the installation the annexor intended the machinery to constitute a permanent improvement of the realty. Unquestionably, in such a situation, the case-law is that the machinery becomes part of the realty and passes with it under a real estate mortgage. Hill v. Farmers' & M. National Bank, 97 U.S. 450, 453, 24 L.Ed. 1051; Fifield v. Farmers' National Bank, 148 Ill. 163, 169, 173, 35 N.E. 802, 39 Am. St.Rep. 166; White Way Sign Co. v. Chicago Title & Trust Co., 368 Ill. 482, 485, 14 N.E.2d 839; Planters' Bank v. Lummus Cotton Gin Co., 132 S.C. 16, 128 S.E. 876, 878, 41 A.L.R. 592. It is true that the machinery in question was not an integral part of the permanent buildings and was removable without injury to the freehold, but these circumstances do not militate against the conclusion that at the time of installation the machinery and plant were a single whole in the contemplation of the law. Joyner v. Mitchell, 267 Ill.App. 427, 429.

The mortgagor of industrial property has it within his means to exclude any portion of his property from the operation of the mortgage. In the instant case the owner of the factory might have limited the scope of the mortgage to the factory stripped of its plant machinery, but instead it provided expressly that the mortgage was to cover the realty and the fixtures. Certainly the terms of the mortgage are consistent with the conclusion reached in the preceding paragraph and, under the circumstances, if the mortgagor had intended the machinery not to share the legal fortunes of the realty, it should have stated as much. It is too plain for words that (1) the law treats the disputed items of property as fixtures and that (2) the property fits the legal description in the mortgage.

On the other hand, the parol evidence relating to negotiations and discussions prior to the execution of the mortgage, would tend to release the entire property in question from the operation of the mortgage, thus amounting in effect to a parol reservation of the fixtures. In other words, under the mortgage the plant machinery and equipment passed to the mortgagee, whereas under the parol evidence it would not pass. Such evidence tended to overthrow the plain meaning of the mortgage, and was specifically objected to on that ground. Obviously the admissibility of this evidence violated the Parol Evidence Rule, and the referee in bankruptcy and the District Court should not have considered it.

It is argued that "the primary test is the intention of the parties at the time of the transaction and installation"; with this we do not disagree. Guardian Life Ins. Co. v. Swanson, 286 Ill.App. 278, 282, 283, 3 N.E.2d 324. As far as installation of the machinery is concerned, the operative fact is the intent of the owner-annexor to make a permanent improvement to the freehold, and it is said that this intention is to be inferred from the nature of the machinery, the relations of the parties, the structure and mode of annexation, and the purpose or use for which the annexation was made. See Fifield v. Farmers' National Bank, 148 Ill. 163, 169, 170, 35 N.E. 802, 39 Am.St.Rep. 166; Swanson case supra, 286 Ill.App. at pages 284, 285, 3 N.E.2d 324. That property becomes a part of the realty which satisfies the intention test above described and, as we have shown, the disputed items of machinery became fixtures upon installation. As far as the mortgage transaction is concerned, that property passes to the mortgagee which fits the legal description in the mortgage, and any secret intention or understanding to the contrary is of no avail to the mortgagor or the person who stands in his shoes. In the instant case "the mortgagor will not be heard to declare what his intention was; his acts speak and his intention is inferred from them." Planters' Bank v. Lummus Cotton Gin Co., 132 S.C. 16, 128 S.E. 876, 881, 41 A.L.R. 592; cited in Joyner v. Mitchell, supra, 267 Ill.App. page 430.

Respondent relies considerably on National Bank of Republic v. Wells-Jackson Corp., 358 Ill. 356, 193 N.E. 215, 98 A. L.R. 618, but the case is clearly distinguishable. Cf. White Way Sign Co. v. Chicago Title & Trust Co., supra. In the Wells-Jackson case the annexor was neither the owner of the realty nor the owner of the chattel, and in addition the tenant responsible for the annexation and the vendor of the chattel made an express agreement that the chattel should remain personal property until the purchase price was paid. It is our observation that the legal test by which a court may treat realty and chattel attached thereto as a single whole, where both are owned by the an-

nexor, is not necessarily the legal test by which a court would determine whether the separate owner of a chattel had lost it by accession or by a tenant's annexation to the freehold.

■ Respondent makes much of the oral testimony regarding the failure of the parties to execute a chattel mortgage in the preliminary negotiations prior to the making of the real estate mortgage. We are unable, however, to perceive how it evidences an agreement either treating the machinery as personal property or excepting the machinery from the lien of the mortgage. See Thuma v. Granada Hotel Corp., 269 Ill.App. 484, 489, 491. Certainly, to assign such legal effect to testimony relating vaguely to a contemplated chattel mortgage ignores completely the very acts of the parties as evidenced by the express terms of the mortgage itself.

Nor is such an agreement inferable from the evidence relating to the post-mortgage conduct of the mortgagee. Of course it is supposable that the balance sheet circumstance and the position of silence assumed at the sale, together with the answer filed in the bankruptcy proceeding, might constitute the basis for an estoppel. But the respondent neither invoked this doctrine nor could he have proved injury if he had. In passing we observe that recently an Illinois court has ruled squarely against estoppel in a case where the conduct of the mortgagee (and persons claiming under the mortgagee) was positive and affirmative in nature. See Kenny v. Arzt Foundry Co., 308 Ill.App. 251, 260, 31 N.E.2d 620.

■ Respondent also argues from the case of Banfill v. Twyman, 71 Ill.App. 253, affirmed 172 Ill. 123, 49 N.E. 985, to the effect that the mortgagee's conduct and the trustee's separate transfer of the machinery at the bankruptcy sale resulted in its severance from the realty and in a total loss to the mortgagee of the mortgage lien. The Banfill case goes no further than to apply estoppel where such a mortgagee or his assignee would seek to follow the property in the hands of an innocent purchaser. Clearly this is not our case, and no more need be said than that the judicial destruction of the lien against the property through the instrument of estoppel, does not necessarily carry with it the added penalty of loss of lien against the proceeds.

■ We have proceeded on the theory that the petitioner stands in the shoes of the mortgagee. Certainly, on this record, the mere assignment of the mortgage after the bankruptcy sale, does not operate to give the assignee any less standing in court than his assignor would have had. We have also considered the opinion evidence drawing a distinction between power and production machinery, but obviously the distinction loses its significance in view of the conclusion reached.

The order of the District Court is reversed.