## THE SEABOARD BURNER CORP.

*vs.*

## HOME OWNERS' LOAN CORP.

Court of Common Pleas   New Haven County   File No. 31207

MEMORANDUM FILED FEBRUARY 21, 1942.

*T. Holmes Bracken,* of New Haven, for the Plaintiff.

*J. Thomas Sullivan,* of New Haven, for the Defendant.

DEVLIN, J.   This is an action in conversion to recover the value of an oil burner installed by the plaintiff in property

subsequently acquired by the defendant. On September 28, 1936, the plaintiff was known as the Seaboard Automatic Burner Corporation and on that date it entered into a conditional sales agreement with Bella Portnov for the installation of an oil burner in her home, 1600 Chapel Street, New Haven. Under the terms of the agreement the burner was to remain personal property until entirely paid for. Previous to this, on May 10, 1934, the defendant had taken a mortgage on the premises and payments being in default it secured a judgment of foreclosure on June 24, 1938, with the law day set as October 21, 1938. Payments were in default on the burner contract and on September 3, 1938, plaintiff notified defendant of its claim under the agreement and asked it to assume the obligation in lieu of its removal of the burner. On October 18, 1938, defendant notified counsel for plaintiff that defendant would not surrender the burner or assume payments on the ground that it had become so attached to the real estate that the defendant was entitled to it under the terms and conditions of its mortgage.

Two defenses are set up in this action, the first claiming that the conditional bill of sale was improperly executed and thus was an absolute sale within the meaning of section 4697 of the General Statutes, Revision of 1930, and the second that the burner was a fixture within the meaning of section 4699 of the General Statutes, Revision of 1930.

As to the first defense, it appears that in the written part of the agreement two names are listed as buyers, Bella Portnov and S. Portnov and the address of both and the place where the oil burner was to be installed was 1600 Chapel Street, their home. When the bill of sale was signed it contained the signature of Bella Portnov, by S. Portnov, Att., and was not separately signed by S. Portnov for himself. When it was acknowledged, however, S. Portnov appears to have been acknowledged as an individual and again as attorney in fact for Bella Portnov. It is the contention of the defendant that S. Portnov not having signed as one of the named purchasers and there appearing no authority for his signing for the wife as he did, the sale is defective within the meaning of the statute.

When the defendant executed its mortgage in 1934 it well knew that title to the property stood only in the name of the wife. Its present claim is based upon its foreclosure of her

interest in the property. At no time was it misled to believe that S. Portnov had any interest in the property, it does not trace its present claim through him, and the irregularity in having two acknowledgments does not destroy the rights created against Bella Portnov herself.

The purpose of our statute requiring conditional sale contracts to be in writing, acknowledged and recorded, is to protect those who, from the fact of possession and apparent ownership by the vendee, may be led to believe him to be the actual owner of the property held by him under such contract, and the recording of the instrument is constructive notice to all the world of its contents, and therefore of the facts as to the true ownership of the property in the possession of the conditional vendee. *National Cash Register Co. vs. Lesko,* 77 Conn. 276.

As to the other point, suffice it to say that the agreement was talked over with the wife and husband by the salesman for the plaintiff and in view of the fact that she was sick in bed at the time and unable to sign and all parties knew he was signing for the wife there appears sufficient basis for such authority.

In view of this I am of the opinion that this claim of defendant has no basis in fact or law.

The second claim of the defendant is based upon section 4699 of the General Statutes, Revision of 1930, the pertinent portion of which reads as follows: "....all conditional sales of property which, at the time of such sale or thereafter, shall be so attached to any real estate as to appear to be a fixture, or to form a part of such real estate, shall be held to be absolute sales...."

The character of the oil burner as real or personal property is to be determined as of the date it was placed in the building. In dealing with the question as to what constitutes a fixture the courts of this State have seemed to follow the test as given in the case of *Capen vs. Peckham,* 35 Conn. 88, 94, wherein it is stated: "It is essential to constitute a fixture that an article should not only be annexed to the freehold. but that it should clearly appear from an inspection of the property itself, taking into consideration the character of the annexation, the nature and the adaptation of the article annexed to the uses and purposes to which that part of the

building was appropriated at the time the annexation was made, and the relation of the party making it to the property in question, that a *permanent accession to the freehold was intended* to be made by the annexation of the article." (Italics added.) Thus it would seem that the paramount consideration in determining whether articles annexed to the realty become fixtures or remain personal property is the intention with which they were attached; but factors in determining this intention are the degree and permanency of the annexation, the nature and adaptation of the article annexed to the uses and purposes to which the realty was appropriated at the time of the annexation, and the relationship of the parties at the time. *Webb vs. New Haven Theatre Co.,* 87 Conn. 129.

Considering the first factor, it appears that there was a furnace on the premises and the plaintiff simply placed a new burner inside. The burner, weighing eight to ten pounds, rested in the center of the furnace upon its own legs and was connected with oil lines and electric wiring which were already there. In the installation a cement-like hearth was constructed within the furnace and together with the burner weighed about 75 or 80 pounds. There was no pit dug and no structural changes were required and the hearth and burner could be removed in an estimated 15 minutes. The furnace could then be used for the burning of coal by the mere installation of grates. As far as this factor is concerned it does not appear that the degree of permanency of the accession was such that material damage to or substantial change in the freehold would ensue if it was removed.

When an article is claimed to be a fixture, the mode of its attachment is less important than the intention of the parties in making it. *Camp vs. Thatcher Co.,* 75 Conn. 165.

There is no question that the burner was placed in the Portnov home for the purpose of warming the house, but the extent of its use, i.e., whether it was to heat the entire building or whether there were other tenants, does not appear in evidence. It is true, as the defendant points out, that in the case of *Stockwell vs. Campbell,* 39 Conn. 362, a portable hot air furnace, placed in the cellar of a dwelling house for the purpose of warming the house, and set in a pit prepared for it in the bottom of the cellar, where it was held in place simply by its own weight, was considered a part of the realty. The court in that case, however, was dealing with a

question as between the owner and a mechanic lienor and as between these parties there was no question but that the intent was to make the annexation permanent, as was clearly shown by the preparation of the house for the reception of the furnaces. The intention of the parties, however, was the determining factor.

Several other cases have been cited by defendant supporting its claim that a heating system forms a permanent part of the building, but an analysis shows that some arise in jurisdictions which have a specific statute covering heating equipment, others have incorporated section 7 of the Uniform Conditional Sales Act into their law, and others have adopted the so-called "institution" doctrine of New Jersey, where the test is not whether the removal would cause material injury to the building alone but whether the removal would materially injure the essential functions of the building or the operating plant, which, in the case of a dwelling, includes lighting, heating, plumbing, etc. Our statutes and decisions do not go this far.

In the determination of this problem the relationship of the parties is important. In *Lesser vs. Bridgeport-City Trust Co.,* 124 Conn. 59, at page 64, the court, in dealing with the problem, states: "Most of these controversies arise between mortgagor and mortgagee (as here) and landlord and tenant. There is a strong tendency as between mortgagor and mortgagee to hold that such articles are a part of the realty whereas, in the case of landlord and tenant or other holder of a limited term, the tendency is the other way. The reason for this rule is that the owner of the equity is presumed to make improvements for the permanent benefit of the property, while a mere tenant is more likely to make them for his personal convenience. . . .Reference to the facts. . . .will show that, with one exception, the bowling alleys in this case fulfilled every condition from which an intention will be presumed to make personal property a part of the realty. . . .

"The exception referred to arises because of the execution of the conditional sale contract between the original owners and the vendors of the alleys. This contract designated the alleys as personal property."

That an owner of land may make an agreement in favor of the owner of the article at the time of annexation to the effect

that the article shall retain its personal character or be re-movable as personalty is well recognized by the authorities. *Curtiss vs. Hoyt,* 19 Conn. 154; 26 *C.J. Fixtures* §39.

The status of the property agreed upon, however, operates only so long as the indebtedness exists and when the buyer's obligation is discharged the property reverts to its previous condition. *Planters' Bank vs. Lummus Cotton Gin Co.,* 132 S.C. 16, 29, 128 S.E. 876, 881, 41 A.L.R. 592, 599. There is no question that at the time of refusal to surrender the article in question there was a balance due under the terms of the contract.

The original parties to the agreement in installing the oil burner were the conditional vendor and vendee or mortga-gor. It was their intention, as evidenced by the sales con-tract, that the burner was to "remain strictly personal property, and removable without material injury to the premises, re-gardless of the manner or degree of annexation." It would seem, therefore, that a permanent accession to the freehold was not intended to be made by the annexation of the article. It was their intention that the burner was not to become a fixture but was to retain its status as personal property. This raises the question as to how far this expression of intention is binding upon the mortgagee.

A survey of the cases discloses a variety of opinion with respect to this problem, but the majority seem to support the rule that where the removal of the fixture will not materially injure the premises, a seller thereof retaining title thereto may assert his right as against a prior mortgagee of the realty. *Anno.* 37 L.R.A. (n.s.) 119, 125; 13 A.L.R. 448, 460; 88 id. 1318, 1324; 111 id. 362, 372; *Holt vs. Henley,* 232 U.S. 637, 641; *Jones, Mortgages* (8th ed. 1928) §545.

The decisions supporting this view seem to be based upon two different kinds of reasoning. One, which is termed the legal doctrine, is that the intention of the parties to the sale that the chattel shall retain the character of personalty will keep such chattel from becoming a fixture. The other, repre-senting the so-called equitable doctrine, is that if the security of the mortgagee is not diminished, the rights of the vendor of the chattel will be recognized.

The defendant raises another problem, and that is to the effect that this oil burner replaced one already on the premises

at the time the mortgage was placed. There is some differ-
ence of opinion among the authorities on this point, but a
majority of the cases operate on the theory that the interest
of the conditional vendor is to be protected in the absence of
a showing that the security of the mortgagee has been seriously
impaired or diminished. *Anno.* 73 A.L.R. 748, 762; 88 id.
1318, 1335; 111 id. 362, 380; 22 *Am. Jur. Fixtures* §23.

In the present case it does not appear what the condition
of the removed burner was or what was done with it after-
ward, and there is no evidence tending to show a diminution
of the mortgagee's security. It does appear, however, that
the defendant placed its mortgage on the premises in May of
1934 and that this burner was installed in September of 1936,
two years before it took the property over in October of 1938,
and that the average life of a burner of this type is ten years.
So that, even adopting the equitable doctrine theory, it would
seem that the mortgagee has no standing here.

Defendant makes the further claim that at the time of the
foreclosure suit the plaintiff was a creditor of the deceased
mortgagor and as such was in a position to redeem and not
having done so is estopped from asserting any claim at the
present. The present plaintiff was not a party to the fore-
closure suit and there is no evidence pointing to the fact that
it knew of the entry of judgment on June 24, 1938. It does
appear, however, that it made demand for the return of its
equipment on September 3, 1938, before title vested in de-
fendant, so that the defendant knew of the agreement and a
claimed equity in the premises to taking of title on October
21, 1938.

The authorities are in unison to the effect that such an
agreement will prevail as against a subsequent purchaser or
mortgagee of realty who has notice, actual or constructive, of
the agreement.

The defendant was not a purchaser in the true sense of the
word but its title to the property did not become clear and
complete until after the redemption period had passed. To
allow it to stand by and hope to acquire the property which
it knew belonged to another would be to permit the enrich-
ment of one with the property of another which in good con-
science and equity belongs to the other. 26 *C.J. Fixtures* §46;
22 *Am. Jur. Fixtures* §21; *Liquid Carbonic Co. vs Black,* 102
Conn. 390.

It is also generally recognized that one claiming property as against or as having an equitable interest cannot prevail in the absence of a showing that he extended credit in reliance upon the apparent title. The defendant herein extended no such credit. *D'Addario vs. Abbott,* 128 Conn. 506.

I am of the opinion and so find, that the oil burner in question was not a fixture and did not form part of the real estate within the meaning of the statute and that the defendant by not returning same after demand was guilty of a conversion.

The testimony was in conflict as to the value of the burner on the date of conversion. There is a sufficient basis, how-ever, in the facts for a finding of a value of $200.

Judgment may enter for the plaintiff to recover damages of $240.