522 S.E.2d 150

**M.A. HYMAN, Appellant,**

v.

**WELLMAN ENTERPRISES, INC., John G. ("Jack") Wellman, individually and d/b/a Wellman Enterprises, Inc., and Industrial Contractors, Inc., Defendants,**

**of whom Industrial Contractors, Inc., is the Respondent.**

No. 3036.

Court of Appeals of South Carolina.

Heard June 9, 1999.
Decided Aug. 23, 1999.

Daryl J. Corbin, of Corbin Law Firm, of Florence, for appellant.

John P. Henry and Emma Ruth Brittain, both of The Thompson Law Firm, of Conway, for respondent.

HUFF, Judge:

This is an action for conversion of electrical equipment installed in a building. Appellant, M.A. Hyman, brought this suit against respondent, Industrial Contractors, Inc., after Industrial Contractors removed several items of an upgraded electrical system from a building that Hyman purchased from John G. Wellman. The trial court, sitting without a jury, found that the equipment was a trade fixture and, therefore, was property of Wellman, of which Hyman had no title or right of possession. Hyman appeals. We reverse and remand.

## FACTUAL/PROCEDURAL BACKGROUND

In February of 1988, John G. Wellman purchased a tobacco warehouse and installed an upgraded, heavy-industrial electrical system in order to convert the warehouse into a polypropylene recycling plant. Industrial Contractors installed the upgraded electrical system for Wellman, but Wellman experienced financial difficulties and was unable to pay over $180,000 owed to Industrial. Industrial never filed a mechanic's lien.

Wellman's financial predicament also left him unable to meet the mortgage payments on the upgraded facility. As a result, in June of 1990, Wellman was faced with a foreclosure action on the building. Thereafter, Wellman entered into an agreement with Hyman whereby Hyman agreed to purchase the building and certain machinery for around $362,000, representing the approximate debt on the property. As part of the deal Hyman gave Wellman a nine month option, later extended to twelve, to purchase the property back for the amount paid plus $50,000. Hyman also allowed Wellman to remain in the building during the option period. Wellman executed a deed to Hyman on June 28, 1990 and Hyman recorded his deed to the property the next day. Wellman failed to exercise his option.

Prior to Hyman's purchase, an appraisal was made which placed a value of $925,000 on the building. This appraisal was performed for Wellman, at his request. The appraisal specifically noted the electrical system had been upgraded to industrial use, and described the building as a "manufacturing plant facility." Hyman testified he reviewed the appraisal prior to his purchase, and the provisions regarding the electrical upgrade and improvements as an industrial facility were important considerations in his decision to buy the building.

On May 14, 1990, Industrial wrote to Wellman asking to set up a date at which time Industrial could remove some of the electrical equipment installed in the building for which Wellman had not paid. Shortly thereafter, Wellman agreed to let Industrial remove the equipment. However, Industrial did not immediately remove the equipment. Rather, Industrial waited over five months after Hyman purchased the building and recorded his deed, before they removed the equipment.

From November 28 to November 30, 1990, Industrial removed three specific pieces of equipment at issue here. They included an I–Line panel, a switch gear, and a buss duct.

In May of 1991, Hyman visited the building and found the electrical upgrading had been removed and wiring was ripped out of the building. He testified the building no longer had the capability of being used as an industrial facility, which affected the sales price of the property. Other testimony established the removal of the electrical equipment changed the building from a manufacturing facility back to a warehouse. Hyman eventually sold the property in April 1992 for $450,000.

Hyman brought this action against Wellman and Industrial alleging, among other things, conversion for the improper removal of the upgraded electrical system. The case was originally tried before a jury in 1994. At the close of the testimony, the trial judge granted Industrial's motion for directed verdict on the conversion cause of action, finding Hyman had failed to prove damages. On appeal, this Court reversed and remanded, finding there was sufficient evidence of damages. This Court further found a jury issue existed as to whether or not the removed equipment was personal property or a fixture. *Hyman v. Wellman Enterprises, Inc.*, Op. No. 95–UP–279 (S.C.Ct.App. filed Oct. 25, 1995). On remand, the parties waived a jury trial. After a trial on the merits, the trial judge ruled the three articles of equipment removed were, in fact, trade fixtures. As such, he found they remained the property of Wellman, to which Hyman had no title nor right of possession at the time of their removal by Industrial. He therefore granted judgment in favor of Industrial.

## LAW/ANALYSIS

Hyman argues the trial court erred in finding the upgraded electrical equipment constituted trade fixtures, thereby depriving Hyman of any ownership or right of possession. We agree.

The law of trade fixtures derived as an exception to the somewhat confusing law of fixtures. *Planter's Bank v. Lummus Cotton Gin Co.*, 132 S.C. 16, 128 S.E. 876 (1925).

A fixture is generally defined as an article which was a chattel, but by being physically annexed to the realty by one having an interest in the soil becomes a part and parcel of it. By mere affixation the chattel does not become a fixture. The test for determining whether an item remains personalty or becomes a fixture include the following criteria: (1) mode of attachment, (2) character of the structure or article, (3) the intent of the parties making the annexation, and (4) the relationship of the parties.

*Carson v. Living Word Outreach Ministries, Inc.,* 315 S.C. 64, 70, 431 S.E.2d 615, 618 (Ct.App.1993). As a general rule, whatever is once annexed to the freehold becomes part of it and cannot afterward be removed except by him who is entitled to the inheritance. *City of Greenville v. Washington American League Baseball Club,* 205 S.C. 495, 32 S.E.2d 777 (1945). However, an important exception exists to this rule where the structures are erected or chattels are annexed for the purpose of trade or manufacture. *Id.*

It has been said that the underlying reason why property placed on leased premises by the *tenant* for purposes of trade is regarded as personal rather than real is based upon the rule that the law implies an agreement that it shall remain personal property from the fact that the lessor contributed nothing thereto and should not be enriched at the expense of his tenant when it was placed upon the real estate of the landlord with his consent.

*Id.* at 511, 32 S.E.2d at 783 (emphasis added). The purpose of such a rule allowing a tenant to remove as a trade fixture that which has been apparently affixed to the land is to encourage trade and industry. *Carroll v. Britt,* 227 S.C. 9, 86 S.E.2d 612 (1955).

In the case at hand, though, Hyman and Wellman did not occupy the positions of landlord and tenant at the time the articles in question were allegedly affixed to the facility. It has been noted that the principal cause of confusion in the law of fixtures is the failure to recognize the fact that there are various relationships under which the question may arise, and the same rule does not apply to all. *Planter's Bank, supra.* Rather, the particular case must be considered with reference to the relation of the parties. *Id.*

In *Caulk v. Caulk*, 211 S.C. 57, 43 S.E.2d 600 (1947), the lower court enjoined a husband from removing certain fixtures from a tavern, located on property the husband had conveyed to the wife. On appeal, the husband argued the equipment constituted "trade fixtures" and therefore did not belong to the wife. The appellate court disagreed, noting that there was no relationship of landlord and tenant between the husband and wife. The court went on to state as follows:

> [U]nder our decisions the question of whether an article is to be regarded as a fixture depends largely upon the intention of the parties. All the circumstances must be considered, especially as they throw light upon the intention. The particular case must be considered with reference to the relation of the parties.

211 S.C. at 65, 43 S.E.2d at 604.

In *Planter's Bank, supra*, our Supreme Court considered the various relations under which such an issue arises and determined there are roughly two classes into which the parties may be divided: (1) where the subject matter of the controversy has been placed on the premises by the owner of the fee simple title, and (2) where it has been so placed by one owning less than a fee simple title. To the first class belongs the relationship of vendor and vendee, while to the second class belongs the relationship of landlord and tenant. The court noted that the rules applicable to the two classes are not the same and went on to state:

> It is considered more probable that an improvement, placed on the premises by the owner of the fee, was placed there for the betterment of his estate and during its continuance, which is deemed perpetual. On the other hand, it is considered more probable that an improvement, placed on the premises by one who did not own the fee, was placed there for his personal convenience and during the limited term of his estate. As a matter of public policy, that the life tenant, tenant for a term or license, may not suffer the estate to go to waste, great liberality is extended to them in reference to their intention. Trade fixtures annexed to the premises by a tenant have uniformly been considered not to be fixtures, and to be removable by the tenant at the end of his term, *a liberality not extended to relations of the first class above referred to.*

· 132 S.C. at 23, 128 S.E. at 878 (emphasis added).

At the time the equipment in question was allegedly affixed to the premises, Wellman was the fee simple owner of the estate. Wellman later sold the premises to Hyman, and the relationship of the parties was that of vendor and vendee, not landlord and tenant. Accordingly, the rules governing trade fixtures in landlord/tenant situations are not applicable to the case at hand, and the trial court erred in applying the rule as such.

The question persists, however, as to whether or not the pieces of equipment constituted fixtures or remained the personal property of Wellman. Because the trial court erroneously determined the trade fixture exception applied, he did not adequately address this issue. *See Carson, supra* (a fixture involves a mixed question of law and fact and it is incumbent on the court to define a fixture; but whether it is such in a particular instance depends upon the facts of that case). Accordingly, we remand for determination on this point.

For the foregoing reasons, the order below is

**REVERSED and REMANDED.**

HOWELL, C.J., and HOWARD, J., concur.