## DeLAINE v. ALDERMAN.

1. Entering upon the lands of another and removing therefrom iron rails, which are taken away and retained, gives no right of action under a statute which prohibits a forcible entry upon and retainer of the "lands or tenements" of another, or the forcible exclusion of the owner from his "lands or tenements."
2. Where the owner of a private railway laid his track across a strip of land, with the acquiescence of the land owner, for a temporary purpose, the iron rails so laid do not become fixtures, or a part of the realty, but remain the property of the railroad proprietor, who has an executed license to use this track, and who may remove the rails at will.
3. Having such executed license, the track-owner may peaceably enter upon the land and remove the rails without thereby committing a trespass, if the removal does no injury, even if forbidden by the landowner so to enter.

Before PRESSLEY, J., Clarendon, October, 1888.

This was an action by Henry C. DeLaine against David W. Alderman. The judge charged the jury as follows:

GENTLEMEN OF THE JURY: It is my duty to call your attention to the facts and give you the law in this case. In the first place, all that has been said about the defendant's entering upon that land and building thereon a railroad, has nothing whatever to do with this case. There is not a scintilla of proof as to his committing any trespass by entering on the land to build a railroad. The plaintiff admits that he has not been injured by it, and it has nothing whatever to do with the case. The simple question is this: Is the railroad iron the property of the plaintiff? That simple question the whole case depends upon.

I charge you that if the railroad iron belonged to the Northeastern Railroad Company, and it was hired to the defendant in this case for a lawful purpose, and if he unlawfully put it on another man's land, he cannot thereby transfer the property of the railroad company to the plaintiff. He cannot do it. Such a doctrine of law is monstrous. Here is a man who wanted to hire a cotton gin to gin cotton with, and another hires it to him for a lawful purpose, and he unlawfully connects it with another man's

gin works; he cannot claim it. I charge you that if the railroad iron belonged to the Northeastern Railroad Company, and they hired it to the defendant for a lawful purpose, it remains their property, and cannot be transferred if he unlawfully put it on another man's land. That is the testimony, not contradicted, that it did belong to the Northeastern Railroad Company; they did hire it to him, and forbid his using it on another man's land until after first getting papers that would allow the company to go, at any time they may see fit, upon the land and take the iron away. Is there any testimony that it was not hired for a lawful purpose by the railroad company? If not, their property cannot be transferred to any other person.

If, then, this property belonged to the railroad company, and they hired it to the defendant, and he went on there without permission, he did purchase the right for the road to go through other people's land to remove this iron. If he unlawfully went on a man's land, the property cannot be transferred to the owner of the soil. The law of fixtures some fifty years ago was a harsh law. This case seems not to rest upon that old law. The old law was this: If a tenant rented land from a landlord and put upon that land improvements, the landlord could turn him out and keep his fixtures. That was the old law. If he made any improvements upon the land, the old law called them fixtures; they belonged to the landlord. But now if a man rents land and wishes to follow any trade or art, and makes any improvements for his use in the way of a trade, and not being used for the purposes of the plantation or farm, it does not become a fixture. In other words, if a tenant rents a farm and he has some skill in dyeing, and to conduct his business he erects improvements for that purpose, and used them in dyeing, such improvements as vats, furnaces, or small houses, or anything necessary to conduct his trade, the law says to the landlord that it is not fixtures. It remains the property of the man running the business, and not the owner of the land. If the same man puts up improvements for the purpose and use of the plantation, the law says they are fixtures.

Anything that is not connected with the purposes of the plantation is not fixtures. Was this railroad for the purpose of the

plantation ?   Was it used for the purpose of carrying on the business of the plantation ?   If it was, it was a fixture.   If it was not, the law says it was not a fixture.   If a man puts his saw-mill upon another man's land, and builds a railroad to conduct his lumber to market, or to keep his mill in timber, what has that mill and railroad got to do with the plantation upon which it was located?   If it was not used for the purposes of the plantation, the law says that it is not a fixture, and the man cannot claim it unless it is for the use of the plantation.   That is the law of fixtures.   I charge you that railroad iron put down on a man's land is not a fixture, and the right of the property is not transferred to the owner of the land.   This road did not pass over this man's land more than three hundred yards.   Now, was that railroad a part or parcel of that plantation ?   If not, it was not a fixture.

About twenty years ago our legislature passed a law called the law of betterments.   That law presumes to make good whatever one puts on the land of another, believing at the time that he had a right to do it.   That is the law in this State.   He must be allowed to move his improvements, or be paid their value.   That is the only way one who enters another man's land, not a tenant, believing that he had a right to do it, if he does it and makes erections or any improvements, he must be allowed to move them, or the owner of the land pay him for their value.   The owner of the land is not bound to pay what it cost him, but the owner of the land is bound to pay him for what they increase the value of the land.   That is the law of betterments, and is in existence in this State to day by the act passed about twenty years ago.   So, under the law of betterments, if the defendant in this case went and put up a saw mill and bought the tram track, really believing that he purchased the right to go on that track, he had a right to put that railroad iron down, whether he had the right of way or not, and the plaintiff in this case justified his believing that he had the right to put that railroad iron upon that tram track, by seeing it done and keeping quiet.   That belief, so created, precluded the owner from claiming the iron, and still belongs to the man that put it there.

So, if you believe the uncontradicted evidence in this case, the

plaintiff has no right to recover the railroad iron or its value. There is no shadow of foundation for the claim of that iron or its value.

What else can he recover? He cannot recover for the putting down of that track. That is not sued for. There is no such allegation in the complaint in this action. The land was not trespassed upon or injured by the defendant in this case. The plaintiff admitted on the stand that his land was not injured by the taking up of the iron. The defendant had no right to commit any outrage. What did he do? His engineer simply took his axe and cut away the trees the plaintiff cut across the track, and tore down the notice, in order to move the iron off of another man's land. The plaintiff cut down trees and stuck up a notice to keep the defendant from moving the iron off of somebody else's land; the defendant had not gotten to his land. He had no shadow of right to cut those trees down across the track, while the engineer had a right to move the trees, and to use such force as was necessary.

The engineer had no right to commit an outrage. He had the right to cut the trees off the track with his axe. In order for the engineer, who is the defendant's agent, to commit an outrage, he must have been acting in concert with the defendant. The defendant is not responsible for what he did outside of his authority delegated to him by defendant. There was something said about some cursing that was heard, but was there any outrage committed? If so, you must find for the plaintiff such damages as will compensate him for the outrage committed upon his person or feelings. If you come to the conclusion that the engineer committed no outrage upon the plaintiff in moving those trees, you must find for the defendant.

Verdict for defendant, and plaintiff appealed.

*Messrs. Charles Boyle* and *M. C. Galluchat,* for plaintiff, appellant.

*Messrs. John S. Wilson* and *Joseph F. Rhame,* contra.

July 6, 1889. The opinion of the court was delivered by

Mr. Justice McGowan. The complaint stated that "on or about May 2, 1887, the plaintiff was in possession of a tract of land in Clarendon County, and that the defendant, by himself and his servants, unlawfully entered upon said land, and with force and violence did remove from said land iron rails, which were fixtures, property of said plaintiff, whereby plaintiff lost said iron rails, to the damage of said plaintiff five hundred dollars, and thereby defendant, by force of section 2295 of the General Statutes of the State, forfeited and became liable to the plaintiff in treble the amount of said damages. Wherefore plaintiff demands judgment against the defendant for the sum of fifteen hundred dollars."

It seems that the defendant purchased a saw mill and the right to run a tram road, by which to transport his lumber, connecting with the Central Railroad. Afterwards he wished to improve the road so as to run an engine on it, and for that purpose he hired iron rails from the W., C. & A. R. R. Company and laid a temporary iron rail track, and in doing so straightened somewhat the tramway. This new track was used without any complaint of the change on the part of the land-owners, who had given Bradham (from whom the defendant purchased) permission to build the tramway. The timber, however, became exhausted in the locality, and the defendant commenced taking up the track, when, for the first time, the plaintiff claimed that the track ran over a corner of his land—about two hundred yards in an unenclosed bottom—and gave notice that the rails must not be removed, for by being laid there they had become "fixtures," and belonged to him as the owner of the soil. The defendant, nevertheless, removed the rails, and the plaintiff brought this action for $500 damages, and the consequent forfeiture of three times that amount ($1,500) against the defendant as a "disseizor" in forcible entry and detainer. The defendant put in a general denial, and, interposing several specific defences, denied that the plaintiff owned the land mentioned in the complaint, or, if so, that he ever objected to the entry and laying down of the rails, but reserved his objections to the removal of them; that the plaintiff knew that the rails were laid only for a temporary purpose, and that the land was not in the slightest degree injured,

either by laying down or taking up the rails, which was admitted by the plaintiff.

The plaintiff's attorney made the following requests to charge, which was declined by the judge: "1. That if the jury believe the plaintiff notified the defendant not to come upon his land, and the defendant, unauthorized, did go, then the plaintiff is entitled to recover something for such unlawful invasion of his rights. 2. That if the defendant laid rails and fastened them to the soil as for a railway on plaintiff's land without consulting plaintiff, then they became fixtures and a part of the land, and defendant had no authority, without plaintiff's permission, to remove said rails. 3. That if defendant rented rails and attached them to the soil of plaintiff's land, the fact that the rails belonged to third parties would not justify the defendant in forcibly removing said rails when forbidden to come upon plaintiff's land. 4. That if the jury believe that the defendant attached the rails to the soil of plaintiff, whether the rails belonged to the defendant or to some other party, who had given him dominion over them, the rails, nevertheless, became fixtures and a part of plaintiff's land, and the defendant is responsible to plaintiff for removing them."

Under a full and lucid charge the jury found for the defendant, and the plaintiff appeals to this court upon the following exceptions, alleging error, in addition to the refusal of the requests to charge, as follows: "I. That the complaint did not allege any trespass, and that the only damages claimed under the complaint was the value of the iron rails removed by the defendant. II. That the rails, though attached to the land by the defendant, who had leased them from the W., C. & A. R. R. Company, were not fixtures, and in nowise connected with the land so as to give plaintiff any right of property in them, or right to damages for their removal by the defendant. III. That the rails, not being the property of the defendant, but belonging to the W., C. & A. R. R. Company, the plaintiff could not recover from the defendant for removing them, and defendant was not liable to plaintiff for their value, and the jury could not find any damages for their removal by the defendant. IV. That his honor erred in charging the jury also that there was no evi-

dence of force and violence used by the defendant or his agents in entering upon the land or in removing said iron rails."

We agree with the Circuit Judge, that it is rather difficult to determine the precise character of this case. The complaint indicates that it is simply an action for removing certain iron rails from the land of the plaintiff, under the provisions of the law upon the subject of "forcible entry and detainer," of which sections 2294, and 2295 of the General Statutes provide as follows: "If any person be put out or disseized of any lands or tenements in forcible manner, or put out peaceably, and be afterwards holden out with strong hand, * * * the party aggrieved in this behalf shall have an action against such disseizor. If the party aggrieved recover in such action, and it be found by verdict, or in other manner by due form of law, that the party defendant entered with force into the lands or tenements, or, after his entry, did hold them with force, the plaintiff shall recover treble damages against the defendant," &c. We do not think that this action can be maintained under these provisions of the law of "forcible entry and detainer." There has been no "disseizin" here. The defendant is holding forcibly no part of the plaintiff's lands, but, on the contrary, the plaintiff is in quiet possession of all his real estate.

If it is intended to assert that the iron rails now removed from the land are, in the sense of the above provisions, "the lands and tenements" of the plaintiff, which are holden with strong hand from him, so that in respect to them he can maintain an action for forcible entry and detainer, we cannot accept the view. Such actions for damages and forfeiture are very rare with us, if this is not the first in the State; the remedy generally resorted to for the "restitution" of possession in cases of forcible detention being the summary process allowed, somewhat in the nature of a criminal proceeding. (See *State* v. *Huntington*, 3 Brev., 111.) As it seems to us, both from the nature of the wrong and the terms of the statute itself, the civil action for damages and penalty was given for "the detainer"—not of any sort of property as at common law, but only of "lands and tenements." It is clear that the plaintiff can have no right to the rails in contention, except as an incident and part of his land, as to which there is no alle-

gation of detainer. "Forcible entry cannot be of a way or other easement or of a common or office." 1 Tom. Law D., title, "Forcible Entry and Detainer."

As the action was under the statute, this would seem to be an end of it. But it is suggested that the action is maintainable as an ordinary trespass *vi et armis.* This could be only on the ground that the rails were the property of the plaintiff. He certainly had no right to them when they were first laid upon his land. But it is insisted that as soon as they were so laid they became his property by operation of law under the doctrine of "fixtures," by which personal property which is affixed to the freehold becomes a part of the freehold, so that the ownership of it is merged in that of the soil. Without reference to the undoubted fact that the rails did not belong to the defendant, but were hired from the railroad company for the purpose of using them on the temporary track, we agree with the Circuit Judge that they were not laid on the plaintiff's land in such manner and under such circumstances as to make them "fixtures," transferring the title to the owner of the soil. As was said by this court in *Evans* v. *McLucas,* 15 S. C., 70 : "As a general rule, all things that are annexed to the land become a part of it, but to this there are exceptions, as where there is a manifest intention to use the alleged 'fixtures' in some employment distinct from that of the occupier of real estate, or where the chattel has been annexed for the purpose of carrying on trade, it is not, in general considered as part of the realty. In modern times, for the encouragement of trade, many things are now considered as personal property which seem to be attached to the freehold. This is particularly true as between landlord and tenant for years. The tenant may take away chimney pieces or a cider mill and press or pump erected on the land," &c.

It is said that the defendant here was not a tenant, but a mere intruder. He had purchased the right to the tram road. No objection was made to improving it by substituting the iron rails. The plaintiff seeing the rails laid down stood by in silence, and we think all the circumstances amount at least to an executed license, which the plaintiff could not revoke at his option so as to appropriate the rails which, with his knowledge, were placed

on his land for a temporary purpose without objection on his part. Besides, it was manifestly the expectation and intention of all the parties that the track was to be temporary in its character, and not a permanent structure, as an improvement of the land. (See *Sullivan* v. *Jones*, 14 S. C., 366; *Dominick* v. *Farr*, 22 S. C., 585; and *Jones on Chattel Mortgages*, page 133.) In this last reference the principle, as we understand it, is correctly stated. "The purpose of annexation, as well as the mode of it, determines the. character of the property annexed. The same mode may exist, and yet the property be personal in one case and real in another. For example: trees growing in a nursery are annexed to the soil in the same way as trees growing in an orchard. But in the former case they are cultivated for the purposes of trade; in the latter as a permanent accession to the land. The general principle to be kept in view, underlying all questions of this kind, is the distinction between the business which is carried on upon the premises and the premises themselves, or *locus in quo*. The former is personal in its nature, and articles that are merely accessory to the business, and have been placed upon the premises for this purpose, and not as accessions to the real estate, retain the personal character of the principal to which they appropriately belong, and are subservient," &c.

But it is still further urged that, conceding that the removed rails were not in the sense of the forcible entry law, "lands and tenements," nor the personal property of the plaintiff as "fixtures," still the defendant, after being forbidden to do so, did go upon the plaintiff's land by force, and did tread down the grass thereon growing, thereby in law breaking his close; and therefore, in any event, the plaintiff was entitled to recover something for such unlawful invasion of his rights. It will be remembered that the plaintiff never objected to the defendant entering upon his lands and laying down the rails, but only objected to his entering for the purpose of removing them. It was then too late to object, for, as we have seen, the plaintiff, by his previous conduct, had at least given license to lay and use the rails, and that, as we think, carried the right to remove them in a quiet and peaceable manner. The plaintiff himself proved that his

land was in no way damaged, either by laying down or removing the rails. The judge did charge that "there was not a scintilla of proof as to defendant committing any trespass in entering on the land to lay the rails, and that the plaintiff admitted on the stand that his land was not injured by the taking up of the iron." But he also charged that while the engineer who removed the rails had the right to enter upon the plaintiff's land for that purpose, yet he had no right to commit an "outrage" upon the plaintiff; and if he did so by cursing or otherwise while cutting up the trees which had been thrown across the track, or in taking up the iron rails, "the jury must find for the plaintiff such damages as would compensate him for any outrage committed upon his person or feelings."

The judgment of this court is, that the judgment of the Circuit Court be affirmed.