227 S.C. 9 (1955)
86 S.E.2d 612
RUTH P. CARROLL, Appellant,
v.
MRS. HAZEL NELL P. BRITT, Appellant, MRS. HAZEL PARKER COOPER, Respondent.
16982
Supreme Court of South Carolina.
March 21, 1955.
*10 Messrs. Epps & Hoffman, of Conway, for Appellants.
J. Reuben Long, Esq., of Conway, for Respondent.
*11 The following is the opinion of the Master:
This action was commenced October 30, 1952, and its primary purpose was to have the court approve a contract, or agreement, between the plaintiff, Ruth P. Carroll, and her minor sister, the defendant, Mrs. Hazel Nell P. Britt, by which agreement the latter agreed, for the purpose of partition, to convey to the former, her one-half interest in and to the premises described in the complaint as containing fourteen and sixteen one hundredths (14.16) acres, more or less, and lying in Horry County.
The matter was referred to me with the consent of the parties, by order of the Clerk of Court dated July 11, 1953, for the purpose of having me take the testimony and report the same, together with my findings of law and of fact.
I have taken the testimony and am returning the same herewith.
It appears that the defendant, Mrs. Hazel Parker Cooper, was made a party for the purpose of excluding any claim that she might have made, either as the widow, or as an heir at law, to any interest in the said land which belonged to the late James Vance Parker, at the time of his death, November 10, 1946.
Mrs. Parker, who is now Mrs. Cooper, however, answered and made claim to three buildings which she had moved onto the premises from a lot of her own, while she was the wife of Mr. Parker.
Mr. William Vaught was made a party for the purpose of having the Court cancel of record a mortgage executed to him on January 22, 1949 by the defendant, Mrs. Hazel Parker Cooper (then Mrs. Hazel U. Parker), covering the premises in question.
The defendant, William Vaught, was duly served with a copy of the summons and complaint, as is shown by the proof of service in the record, and he is in default, having neither answered, de urred, nor given notice of appearance, *12 although he is not in the armed services, as is shown by affidavit of R.D. Epps, Esquire, dated July 11, 1953, which is in the record.
I heard, with great interest, the argument of Counsel, who also submitted briefs, and gave careful consideration to this case, which is quite unusual in some of its aspects.
Since the only serious questions in the case are those raised by the answer of the defendant, Mrs. Hazel Parker Cooper, I shall consider them, first, after reciting the facts which I find from the preponderance of the testimony.
The late Mr. James Vance Parker was, prior to July 1942, residing with his wife, the defendant, then Mrs. Hazel U. Parker, and their two minor daughters, the plaintiff, Mrs. Ruth Carroll, and the defendant, Mrs. Hazel P. Britt, both of whom were then unmarried, on an acre of land in Horry County, which belonged to the wife.
At that time, the buildings on this lot were a combination residence and store, a packhouse and a wash house, the family residing in the residence, and Mr. Parker was operating the store.
This lot was in the locality which was condemned by the government for the purpose of establishing the Myrtle Beach Bombing Area, and this lot being condemned for that purpose, Mrs. Parker sold the same to the government on July 30, 1942, apparently, with the right of removing the buildings. She tried to purchase a nearby lot upon which to move her buildings, but failing in this, she at a cost to her of $1,000.00, had the said buildings moved onto the tract described in the complaint, which constituted a farm owned by her husband, and which is located across the public road from the lot of Mrs. Cooper.
The family, at once, moved into the dwelling house and Mr. Parker operated the store, along with the farm.
Some time afterwards, Mrs. Parker had the dwelling improved and had the packhouse fixed up for a tenant house, which was used in connection with the farm.
*13 Mr. and Mrs. Parker had separated for short intervals on more than one occasion, but, in January 1944, she left the home and moved away, taking their two young daughters with her, and she never came back, until during the month of August 1946, after Mr. Parker had gone to the hospital, never to return alive, and he died intestate on or about November 10, 1946.
In the meantime, Mrs. Parker went to the state of Florida, and, on March 28, 1946, procured a divorce from her husband, and it is admitted by the parties in the record that this divorce was, and is valid, binding on Mrs. Parker.
Mrs. Parker made an application for Letters of Administration by Petition in which she listed herself and two daughters as the heirs at law of the decease, and in this Petition, she valued the tract of land described in the complaint at $2,500.00.
The three appraisers, appointed by the Probate Court, appraised this tract of land, the land itself at $1,000.00 and five buildings thereon at $1,500.00.
Mrs. Parker was issued Letters of Administration December 27, 1946 and was discharged March 1, 1948.
Mrs. Parker has lived on the premises and has conducted the farm and store every year since the death of Mr. Parker up through the year 1952, and she has continued to live in the residence and to conduct the store down to the present time.
During the year 1952, Mrs. Parker married Mr. Eugene Cooper, who has, since his marriage, resided with his wife in the residence.
On or about January 22, 1949, Mrs. Parker executed a mortgage to the defendant, William Vaught, covering her "interest" in the tract of land in question.
After the death of Mr. Parker, Mrs. Parker claimed to each of her daughters that she was an heir of Mr. Parker, and, at a later date she abandoned this claim and undertook *14 to purchase the premises from her two daughters at and for the price of $15,000.00, and, still, later, she tried to purchase the one-half interest of the plaintiff for $7,500.00.
The record fails to show that the defendant, Mrs. Hazel Parker Cooper, ever made claim to ownership of the houses after they were removed to the farm of her husband until this action was commenced, and she answered November 21, 1952. In this answer, she claimed to own the three buildings "by virtue of the agreement between this defendant and her husband, James Vance Parker, at the time."
Mrs. Cooper placed upon the stand a witness, Nathan N. Harrell, who testified that on one occasion, after Mr. Parker and his wife separated, he went to the store of Mr. Parker, at noontime, to purchase a soft drink, and that he asked Mr. Parker if he would sell him the farm and Mr. Parker said: "I can't sell the place." He said "the buildings belong to Hazel and if you can do business with her I will be glad to sell. Miss Hazel was in the Ocean Drive Post Office at that time. I said I won't go any further and ask any more questions because I understand the situation between you." I had the advantage of observing this witness when he was on the stand, and I must say he made an exceedingly poor impression upon me, and I do not find his testimony to be true. It is incredible to me that Mr. Parker should have made this statement, when no other witness in the case ever heard either him or Mrs. Parker say or intimate that the buildings belonged to her.
However, even if Mr. Parker had made this statement, it may have been made for the purpose of giving an excuse for not selling the place. Besides this, he was a farmer, not a lawyer, and very probably knew nothing about the law concerning fixtures.
Let us now consider the law, as applicable to this situation.
The cases wherein buildings or other personal property have been placed upon the land of another, with the consent *15 that the said buildings should not become fixtures, but should remain personalty, have no application in this case, since there is absolutely no testimony in the record that the parties agreed that the buildings should remain the personal property of Mrs. Parker. Mrs. Parker alleges this in her answer, but she fails to substantiate this in the testimony.
It is necessary to refer to several authorities before arriving at the general principles which determine whether property remains personalty or becomes a fixture, in the absence of a specific agreement or contract.
We find in 22 Am. Jur. 778 the following:
"Whether or not a building erected on lands is a fixture depends, as in other cases generally, upon the mode of attachment or annexation, the character of the structure, the intention of the person making the annexation, and the relationship of the parties."
In the case of De Laine v. Alderman, 31 S.C. 267, 9 S. E. 950, 952, the court held that where the owner of a private railway laid a track across a strip of land with the acquiescence of the landowner, for a temporary purpose, the iron rails so laid do not become fixtures, or a part of the realty. In that case, the matter is ably discussed by the court and numbers of illustrations given to show that the nature of the fixtures, the manner of their attachment, and the permanent or temporary nature of the same, are determining factors upon the question as to whether or not the articles so placed become fixtures.
In that case, the court quotes the following:
"`The purpose of the annexation, as well as the mode of it, determines the character of the property annexed. The same mode may exist, and yet the property be personal in one case and real in another. For example, trees growing in a nursery are annexed to the soil in the same way as trees growing in an orchard. But in the former case, they are cultivated for the purpose of trade, in the latter as a permanent accession to the land. The general principle to be kept *16 in view underlying all questions of this kind, is the distinction between the business which is carried in or upon the premises and the premises (themselves), or locus in quo. The former is personal in its nature, and articles that are merely accessory to the business, and have been put on the premises for this purpose, and not as accessions to the real estate, retain the personal character of the principal to which they appropriately belong, and are subservient.'"
In the case of Liddell Co. v. Cork, 120 S.C. 481, 113 S.E. 327, 328, 23 A.L.R. 800, the court declares:
"Placed in houses upon the land, installed in the usual manner, and used and operated for plantation purposes, as between Baird, the owner of the land, and his grantees, Cork and McInnes, the articles of machinery were clearly fixtures, and consequently realty."
The question is rather fully discussed in the case of Planter's Bank v. Lummus Cotton Gin Co., 132 S.C. 16, 128 S.E. 876, 41 A.L.R. 592. In that case we quote from the syllabus:
"Intent to make chattel a permanent accession to freehold necessary to constitute it a fixture may be inferred from nature of article affixed, relation and situation of party making annexation, and structure and mode of annexation, and purpose and use for which made."
In the case of City of Greenville v. Washington American League Baseball Club, 205 S.C. 495, 32 S.E. (2d) 777, 783, the court declared:
"An important exception to the general rule of the common law, that whatever is once annexed to the freehold becomes part of it and cannot afterward be removed except by him who is entitled to the inheritance, exists in the case of structures erected or chattels annexed for the purpose of trade or manufacture. It has been said that the underlying reason why property placed on leased premises by the tenant for purposes of trade is regarded as personal rather than real is based upon the rule that the law implies *17 an agreement that it shall remain personal property from the fact that the lessor contributed nothing thereto and should not be enriched at the expense of his tenant when it was placed upon the real estate of the landlord with his consent. The question whether particular structures or articles are removable as trade fixtures depends solely upon whether they are designed for the purpose of trade; and this turns on the intention with which they were affixed to the realty; and not upon the character or mode of the physical annexation to the realty. Hence, it may be said that what constitutes a trade fixture depends upon the facts of the particular case and that this question is usually a mixed question of law and fact for the jury."
Let us now quote from 36 C.J.S., Fixtures, § 38, page 973, as follows:
"The question whether an improvement remains as a removable trade fixture is frequently said to be one of intent. Occasionally the courts, in discussing the question of the tenant's right to remove an article annexed for purposes of trade, use language to the effect that there is no right of removal if the tenant made the annexation with the intention that it should be permanent, but that there is such right if the intention was of a contrary character. Occasionally the courts refer, in this connection, to the intention, not of the tenant alone, but of the parties or of the tenant and landlord.
"The purpose of the rule allowing a tenant to remove as a trade fixture what has apparently become affixed to the land is for the encouragement of trade and industry. Occasionally it has been said to be based on the presumption of an intention on the part of the tenant to remove the article annexed. * * * As a general rule, a tenant has no right to remove a trade fixture if its removal would substantially injure the freehold, but, of course, in order to preclude a removal, the injury which would result must be substantial."
*18 It will be seen from the foregoing that the following questions must be answered in arriving at a determination as to whether or not these houses in question remain personalty, or whether they have become fixtures.
First, are these houses designed primarily for the purpose of trade, or for the enjoyment of the premises?
Second, what was the intention of the parties as to whether or not the buildings should be permanent; in other words, what was the purpose of their annexation as shown by the preponderance of the evidence?
It must be remembered that Mrs. Parker was, in no wise, a tenant of Mr. Parker. She was his wife, living on his farm with their two minor daughters.
Considering the first question, the dwelling house which was placed on the land of Mr. Parker was certainly intended for permanent use, and, although there was a store attached, the primary purpose of the building must have been for a residence, as Mrs. Parker testified that valuable improvements were made upon it by her as a residence. Certainly, the packhouse and the wash house were necessary for the use and enjoyment of the farm, which, apparently, did not have such buildings upon it.
As to the second question, the intention of Mrs. Parker in placing these buildings upon the farm of her husband must be deduced from the facts in the case, and I find the following facts, which indicate that these buildings were not placed on the land for a temporary purpose and were not placed there with the intention to remove the same from the premises. These buildings were moved during the summer of 1942, as the deed of Mrs. Parker to the government was dated July 1942. Mrs. Cooper, then Mrs. Parker, together with her husband and their two children, moved into the dwelling house and Mr. Parker operated the store, and the tenant house and wash house were necessary for the enjoyment of the home and farm. Mrs. Cooper changed the packhouse into a tenant house and fixed the same up for *19 use of a tenant on the farm, and she made valuable improvements to the residence, all of this showing an intention, on her part, that the said buildings should be used permanently in connection with the land. There is absolutely no testimony in the record to show that Mrs. Cooper ever expected to move these buildings from the property of her husband. She moved away from the premises after her final separation, during the month of January 1944, and she did not then claim any right to remove these buildings. She procured her divorce in March 1946, and, although she then ceased to be the wife of Mr. Parker and ceased to have any prospective interest in his property, she made no claim to any right to remove these buildings. In August 1946, after Mr. Parker had been carried to the hospital in his final illness, Mrs. Cooper moved back into the premises with her two minor daughters, and has remained there ever since, and she has never attempted to move the buildings from the premises belonging to her two girls. The buildings are necessary for the enjoyment of the farm and are distinctly not trade fixtures.
I find the following facts from the evidence, which shows that Mrs. Cooper never claimed, on her part, to own these buildings. No person has testified that they ever heard Mrs. Cooper say that the buildings were hers and she never attempted, during all of this time, to remove them. Her two daughters, who were present when the buildings were moved, never heard either their mother or father say that the buildings were to remain the property of the wife. When Mrs. Cooper left her husband and procured a divorce, if she had made any claim to ownership of the buildings, she would certainly have asserted it after she procured her divorce, and thus had no further prospect of inheriting any of the land. When Mr. Parker died, Mrs. Cooper administered on his estate, claiming to be an heir at law, as his lawful widow, which would appear to be a denial, on her part, of any right to ownership of the houses as distinct from any interest in the land. Mrs. Cooper, as administratrix of the estate of *20 Mr. Parker, listed as the real estate of her late husband, the entire realty, as being valued at $2,500.00. The appraisers who appraised the realty appraised these houses now in question as a part of the real estate which belonged to Mr. Parker at the time of his death. Mrs. Cooper endeavored to purchase the entire real estate from her two daughters, offering them full and fair price for the real estate, plus the buildings. Mrs. Cooper never made any claim to ownership in the buildings until the instant suit was commenced, and actually mortgaged her interest in the entire premises.
It would appear that the foregoing findings of fact which are abundantly supported by the testimony, show that the buildings were placed on the land of Mr. Parker with the intention that the same should remain there permanently to be used in the enjoyment of the farm and home.
Adverting again to the testimony of Nathan N. Harrell, it is unreasonable to believe that Mr. Harrell, who went to the store for the primary purpose of purchasing a soft drink, would ask Mr. Parker to sell him the only home and farm which Mr. Parker owned. It is, also, unreasonable to believe that Mr. Parker would so readily consent to sell his home and farm where he was residing, without any question as to what price Mr. Harrell was willing to pay for the same, and without any question as to whether or not Mr. Harrell was able to purchase and pay for the same. In addition to this, as I have already said, observing Mr. Harrell on the stand was of great assistance to me in weighing his testimony on this point, which I had no trouble in discarding as being unworthy of belief.
The two daughters are claiming rent against their mother, Mrs. Cooper, on account of her occupancy of the farm during the years 1947 through 1952, both inclusive, and I find from the testimony of Mr. Tallevast, a witness on behalf of Mrs. Cooper, that the rental value of tobacco acreage was at least $150.00 per acre and that this acreage ran from 4.8 to 5.2 acres, which would average 5 acres per year for the *21 six years that the premises were occupied. Counsel for these two young ladies stated, in open Court, and in their written brief, that the daughters were willing to eliminate this rent in case they succeeded in retaining the buildings in question, but not otherwise, but I make the above findings of fact because I do not know whether or not my findings will be sustained by the Court.
I find that Mrs. Parker cannot recover, in this proceeding, for any monies that she may have expended toward the education of her daughter, as this was her duty, as a mother, and there is no evidence that she ever intended to make a charge against her daughter for performing this duty.
I find that the defendant, William Vaught, is in default, and the plaintiff is entitled to have granted her prayer against him for relief, that is to say: That the Clerk of this Court do cancel of record the mortgage of Mrs. Hazel U. Parker to William Vaught, dated January 22, 1949, and recorded in the office of the C.C.C.P. for Horry County in Mortgage Book 166, at page 11.
I find as a mixed question of law and of fact, that the buildings described in the answer of Mrs. Hazel Parker Cooper, are fixtures and the same have become the property of the plaintiff, Ruth P. Carroll, and the defendant, Mrs. Hazel Nell P. Britt.
I find that it is to the best interest of the minor defendant that the contract between her and her elder sister, the plaintiff, be approved by the Court and I further find that the sum of $7,500.00 is a full and fair price for the one-half interest of the said defendant in and to the premises, including the buildings. I therefore, recommend that the contract as set forth in the answer of the defendant, Mrs. Hazel Nell P. Britt, be approved by the Court and ordered carried out as agreed upon, payment to be made by the plaintiff in the manner set forth in the answer, that is to say, that upon the Master delivering to *22 the attorneys for the plaintiff the deed conveying to the plaintiff the one-half interest in the premises described in the complaint of Mrs. Ruth P. Carroll, that the plaintiff do, at the same time, execute and deliver to the Master for the said Hazel Nell P. Britt the note of the plaintiff in the sum of $7,500.00, less that portion of the expenses of this proceeding, which is to be paid by the said Mrs. Hazel Nell P. Britt, the said note to fall due on October 30, 1954, and to bear interest at the rate of 6 percent, per annum, from October 30, 1952, said interest payable annually, and I recommend that the said interest be authorized and directed to be paid directly to the said Mrs. Hazel Nell P. Britt.
The portion of the expenses of this proceeding agreed to be paid by the said minor is one-half of the costs which it is finally determined must be paid by her and the plaintiff, together, one-half of the attorney's fee and all of the Master's commissions.
I find that the sum of $250.00 will be a reasonable fee, under the circumstances, for the plaintiff and her sister to pay Messrs. Epps and Hoffman as their attorneys in this proceeding.
Of course, any taxes after the year 1952 should be paid by the plaintiff, but if there should be any taxes outstanding for any previous years they should be paid equally by these two parties.
If it should be found necessary, the Sheriff of Horry County should place the plaintiff in possession of the premises upon her presentation of the deed from the Master.
March 21, 1955.
BAKER, Chief Justice.
The exceptions of the then appellant, now respondent, to the report of the Master of Horry County, that is, his findings of fact and his conclusions of law, are too general to raise but one issue in this case. This one issue, giving the *23 then appellant the benefit of every doubt, is embodied in her exceptions four and six which in effect complain of the Master's holding and recommendation, and allege error thereabout where he held that the three buildings which had been situated on a lot of land formerly owned by the then appellant, but the present respondent, and moved to the small tract of land of her then husband, J.V. Parker, became a part of the realty upon which it was moved, and was not her personal property.
Under the facts of this case, and we have assiduously studied the record, and the governing law, we are in agreement with the Master's report. As additional authority for his holding in reference to the buildings moved on the land and the improvements thereto of J.V. Parker, through whom the plaintiff-appellant and the defendant-appellant, daughters and sole heirs at law of said Parker claim, see Caulk v. Caulk, 211 S.C. 57, 43 S.E. (2d) 600. This case settles beyond all doubt that the buildings moved on this land and the improvements made thereon became a part of the realty. For some circumstances under which a building is placed upon land of another without depriving the owner of the building of its ownership, see Gilbert v. Easterling, 217 S.C. 267, 60 S.E. (2d) 595.
The seventh exception of the appellant from the report of the Master wherein he required the appellant there  the respondent here  to pay her daughters, the appellants here, rental for the time she has been in the possession of this property since separating from her husband. J.V. Parker, was bottomed upon the alleged ground that such issue was not responsive to the pleadings. Such holding was directly responsive to the pleadings and the testimony. However, it is stated in the report of the Master that the appellants here had in the hearing before him expressed their willingness to eliminate this rental if they were successful in retaining the buildings here involved. Therefore, they will be held to this statement through or until August 27, 1953, the date of the report of the Master. *24 But we agree with the holding of the Master. The respondent here (Mrs. Hazel Parker Cooper) should pay rental from that date (August 27, 1953) until she gives up possession of the property on the basis indicated by the Master.
There was no exception from the Master's report in reference to his holding concerning the testimony of Nathan N. (Gabe) Harrell, and we have therefore not considered the testimony of this witness taken before the Circuit Judge, nor that of the witnesses as to the reputation of Harrell. However, we have read the testimony of this witness which was taken before the Circuit Judge and notice that when then testifying, Harrell stated that in his conversations with the late J.V. Parker, as to Parker selling and him buying the property here involved, he quoted Mr. Parker as saying: "Gabe, I cannot sell this place because Hazel owns the buildings and she has a divorce and is living some place else but if you will contact her and make arrangements I can do business with you." On cross-examination Harrell fixed the time of his conversations with Mr. Parker as in April, 1945, and in testifying before the Master he had also placed the time of these conversations as some time in 1945. The record shows that Hazel Parker Cooper did not procure a divorce from Mr. Parker until in March, 1946, so the statement attributed to Mr. Parker in April, 1945, was preposterous.
We are of the opinion that the Master correctly decided all issues in this case, his report factually being bottomed on the vast preponderance of the admissible testimony, and the well established governing law.
There is nothing before us as to the payment of attorney's fees for their services in connection with the appeal to this Court. However, Mrs. Hazel Nell P. Britt has in the interim reached the age of twenty-one years, and no doubt she and her sister will reach an agreement with their attorneys thereabout.
Let the report of the Master be reported herewith, and with the foregoing, will constitute the opinion of this Court.
*25 The exceptions to the decree of the Circuit Judge are sustained, and the judgment appealed from is reversed and remanded for the purpose of the procurement of any order or orders necessary to effectuate this opinion.
STUKES, TAYLOR, OXNER and LEGGE, JJ., concur.